**Theodore C. WILLIAMS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20583.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 7, 1967.

Decided April 5, 1968.

Mr. Robert P. Jaye, Washington, D. C. (appointed by this court), for appellant.

Mr. Scott R. Schoenfeld, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Nicholas S. Nunzio, Asst. U. S. Attys., were on the brief for appellee. Mr. Lee A. Freeman, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, McGOW-AN and ROBINSON, Circuit Judges.

PER CURIAM:

Theodore Williams was tried in the District Court, convicted of robbery, and sentenced to from four to twelve years' imprisonment. He appeals on the grounds, *inter alia,*[1] that he suffered prejudice from an unexplained delay of 102 days between arrest and indictment, and that the trial judge abused his discretion in permitting evidence of his prior criminal record to be introduced for purposes of impeachment.

Appellant was arrested December 24, 1965, and the next day brought before a judge of the District of Columbia Court of General Sessions for preliminary hearing. Counsel was appointed to represent appellant shortly before the hearing. The General Sessions Judge found probable cause and ordered appellant held for the grand jury, setting bond at $5,000. Unable to purchase a bond in that

---

1. We find no merit in appellant's contentions with respect to the sufficiency of the evidence and the introduction of certain physical evidence.

amount, appellant remained in custody for the entire period from arrest through trial.

An indictment was returned April 5, 1966. New counsel was appointed by the District Court on April 8, and appellant was arraigned and pled not guilty on April 15. A motion for release on personal bond was denied by the District Court on April 22.[2] Trial was originally set for June 8; appellant and his attorney announced themselves ready to proceed to trial on that date, but the assignment office reset the trial date to July 28. A motion to dismiss the indictment for failure to afford a speedy trial was heard and denied by the District Court on July 15. After two more continuances, the trial commenced on September 1, and a verdict of guilty was returned on September 7.

## I

The Government has offered no explanation of the 102-day delay between arrest and indictment, beyond attributing it to the "normal processes of our judicial system." Appellant does not contend that the delay was purposeful or malicious, but points to our language in Hood v. United States, 125 U.S.App.D.C. 16, 365 F.2d 949 (1966), where we expressed "concern" over a delay of 106 days between arrest and indictment, but held:

> While we do not condone unexplained delays of this order, we have concluded to take no action about this one. Appellants were represented by counsel throughout the period in question, and no complaint was made, either then or at trial. *Id.* at 17 n. 1, 365 F.2d at 950 n. 1.

Appellant contends that reversal is required in this case, since he was not "represented by counsel throughout the period in question," and complained of the delay prior to trial by a motion to dismiss the indictment.

Following oral argument on this appeal, on April 10, 1967, we remanded the record for a hearing to determine:

(1) what services counsel rendered appellant at the preliminary hearing and (2) whether appellant was, in fact, represented by counsel in the interval between preliminary hearing and indictment and, if so, what contacts, if any, counsel had with appellant during his confinement and what services, if any, were rendered appellant during this period.

The record has now been returned to this Court, supplemented by the transcript of a hearing held in the District Court on May 5, 1967, the transcript of the preliminary hearing, and additional memoranda submitted by the parties. The record as thus supplemented strongly supports appellant's contention that he was without the services of counsel during the interval between preliminary hearing and indictment.

At the May 5 hearing, appellant's preliminary hearing counsel testified that he understood his appointment was only for the preliminary hearing; that "of course I would be out of the case" if appellant were held for the grand jury; and that he considered his appointment "lapsed" at the close of the hearing. And though he added he would have been willing to provide further services on a fee basis, if requested, he stated that he rendered no further services and had no contact with appellant, or any friend or member of his family, after the preliminary hearing.

Appellant also was called to testify at the May 5 hearing. He stated that he had no contact with any attorney from the time of the preliminary hearing until counsel was appointed by the District Court, on April 8; that it was his impression that counsel appointed by the Court of General Sessions was appointed to represent him solely for the preliminary hearing; and that he made several

---

2. A *pro se* motion for reduction of bond was filed by appellant on March 25, but was denied by the District Court on March 31, "without prejudice."

unsuccessful attempts to procure counsel by writing to friends and relatives.

■ The importance of appointed counsel's continuing to function actively on behalf of his client throughout the preindictment period cannot be overemphasized.[3] Counsel's ability to present an effective defense at trial may depend in large measure on the thoroughness of investigative and other services provided at the early stages of the case, while the evidence is still fresh.[4] Important rights may be lost if counsel is not alert to preserve them during the preliminary phase of a criminal proceeding.[5] And an accused may suffer unwarranted pretrial detention if counsel is not available to pursue applicable procedures relating to release on bail or other conditions.[6] The potential for prejudice accruing from the absence of active representation by counsel is no doubt enhanced significantly where, as here, the return of an indictment is inordinately delayed. However, without in any way condoning the serious defects in the proceedings below which the record reveals, we are of the view that the conviction appealed from may not be disturbed without a further inquiry, into actual, as opposed to potential, prejudice.[7] Since we find no significant probability of such prejudice on the record before us, we conclude that the conviction must be affirmed.

Appellant bases his claim of prejudice primarily on the alleged disappearance, in April, 1966, at about the time of the indictment, of a potential defense witness. In order to understand this contention, some background is necessary. The complaining witness, Mr. Adams, was the chief witness for the prosecution at appellant's trial. He testified that he was assaulted and robbed in the course of his duties as a deliveryman. The robbery took place as he was leaving an apartment building, after making a delivery to a first floor apartment. He returned to the apartment following the robbery, and called his store from there. The assistant manager of the store arrived on

---

3. The Plan for Furnishing Representation for Indigent Defendants, implementing for this Circuit the Criminal Justice Act, 18 U.S.C. § 3006A, provides that counsel appointed by the Court of General Sessions "shall actively represent the defendant, including investigation and representation before the grand jury at all stages of the proceedings until relieved or final disposition of the case". Though the Plan was not amended to include express provision for the Court of General Sessions until August, 1966, after the events at issue here transpired, the Act itself, which was enacted in August, 1964, provides: "a defendant for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States commissioner or court through appeal." 18 U.S.C. 3006A(c). Also, Rule 24 of the Rules of the Court of General Sessions and Fed.R.Crim.P. 44 provided at the time of the preliminary hearing in this case that appointed counsel should represent the defendant "at every stage of the proceeding." See Jones v. United States, 119 U.S.App.D.C. 284, 291–292, 342 F.2d 863, 870–871 (1964) (Edgerton, J., dissenting).

4. *Cf.* Jones v. United States, *supra* note 3 at 291, 342 F.2d at 870, (Edgerton, J., dissenting): "The right to counsel does not begin at trial. If it began then it would often be worth little, for cases are often lost at earlier stages."

5. See, e. g., Blue v. United States, 119 U.S.App.D.C. 315, 321–322, 342 F.2d 894, 900–901 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965).

6. We have had occasion in two recent cases to stress the necessity that counsel be available to pursue diligently the procedures of the Bail Reform Act, 18 U.S.C. § 3146 *et seq.* Shackleford v. United States, 127 U.S.App.D.C. 285, 289, 383 F.2d 212, 216 (1967); Grimes v. United States, 129 U.S.App.D.C. ——, 394 F.2d 933 (Nov. 27, 1967). Though the Bail Reform Act was not yet in effect at the time of appellant's pre-indictment incarceration, prior procedure would have called for a motion to reduce bond. See Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1952).

7. *Cf.* Jones v. United States, *supra* note 3 at 303, 342 F.2d at 882 (Prettyman, J., for the Court): Dockery v. United States, 129 U.S.App.D.C. ——, 393 F.2d 352 (Jan. 31, 1968).

the scene shortly thereafter, accompanied by a police officer. Mr. Adams and the other two men drove around the neighborhood for a short time, and though they saw appellant he disappeared before they were able to talk to him. When they returned to the store, they learned that the female occupant of the apartment had telephoned there, leaving word that she might be able to identify the suspect. They therefore went back to the apartment, whereupon the woman informed them that she had seen a man enter the building behind Mr. Adams, and go up to the second floor. Then Mr. Adams and the police officer went out again, and this time they found appellant and brought him back to the apartment.

At trial, Mr. Adams testified that when confronted with appellant, the woman stated that he was not the man she had seen enter the building behind Mr. Adams. Appellant's testimony was to the same effect; he testified that she had said, "No, this is not the man." The only contradictory testimony was that of the police officer. His version was that the woman had said appellant "looked like" the man she had seen, but that she was unable to make a positive identification. On cross examination, he explained that she had first stated that appellant was the man, and then shrugged her shoulders.

The woman who thus confronted appellant shortly after the robbery is the potential defense witness on whose disappearance appellant bases his claim of prejudice. His theory is apparently that the woman would have testified that he was not the man she saw enter the building behind Mr. Adams, thus, perhaps, raising a reasonable doubt as to whether this unnamed intruder, and not appellant, was the man who assaulted and robbed the complainant. Whether or not the witness' testimony would have been as appellant asserts, we are unable to accept the contention that her disappearance constitutes sufficient prejudice to warrant reversal of the conviction. Two witnesses, including the complainant (whose testimony on this point was very likely to be credited by the jury) testified at trial that the woman stated, on being confronted with appellant, that he was not the man she had seen follow Mr. Adams into the building. In view of this, it is hard to see how appellant could have been materially helped by her presence at trial—even assuming she would have testified as appellant now claims.[8]

We have searched the record, and are unable to find any other indication that appellant was in fact prejudiced by the preindictment delay and lack of assistance of counsel. We do not decide whether, under some circumstances, the mere fact of lengthy pretrial incarceration attributable to the absence of legal assistance might in itself be sufficient prejudice to warrant reversal of a conviction. Here, it seems most unlikely that the services of counsel could have made a difference. The $5,000 bond condition imposed by the General Sessions Judge reflected, no doubt, appellant's prior criminal record, which included parole violation. That counsel would have been able, under the circumstances, to obtain a reduction of the bond seems highly improbable. Our conclusion in this regard is strongly supported, we think, by

8. It may be, of course, that the woman's testimony would have been less positively favorable to appellant than the hearsay reports at trial of her reaction on being confronted with appellant. Any wavering or uncertainty on her part would probably have been quite damaging to appellant. Though the record is not entirely clear on this point, it appears that appellant's counsel may not have done all that could have been done to contact the woman and produce her at trial. We note especially the fact that little or nothing appears to have been done to attempt to contact the witness during a 5 day recess in the trial, granted by the court in order to permit further efforts to be made, after it had been represented by appellant's counsel that the woman was known to be living in North Carolina. Whether the failure to make maximum efforts to find the woman was influenced by an assessment of the relative risks and advantages involved in producing her at trial we cannot say with confidence.

the fact that a motion for release on personal bond, prepared by counsel, was denied by the District Court shortly after indictment.[9]

■ That we find no prejudice on the record of this case should not, we stress, be taken as evidence of any lack of concern on our part for the unfortunate circumstances here presented. To the contrary, we wish to make crystal clear that we do not consider that counsel's duty, when appointed in a felony case by the Court of General Sessions or the U. S. Commissioner, is fulfilled upon completion of the preliminary hearing. Rather, appointed counsel should remain actively in the case, rendering all necessary services during the preindictment period, until the charges are disposed of or the court grants permission to withdraw.[10]

## II

At trial, appellant was called as a witness in his own behalf. No question as to the admissibility of his prior criminal record was raised prior to his taking the stand. Thereafter, during the course of the prosecution's cross examination of appellant, counsel sought a ruling from the trial judge that evidence of appellant's prior criminal record would be inadmissible. Counsel argued that the prejudicial effect of such evidence would far outweigh its probative value. He argued that appellant's age (20) at the time of one of the convictions should be taken into account, and contended also that the government's case was "weak" and that appellant's testimony was "crucial," thus increasing the danger of prejudice. The court denied the motion,[11] and the government introduced evidence of two prior convictions of appellant, for robbery (in 1960) and attempted housebreaking (in 1964).

■ Appellant now asserts that the trial judge abused his discretion under Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), in that he failed to weigh the "specific circumstances in the case before him" in deciding whether to admit the convictions. He points to our observation in Brown v. United States, 125 U.S.App.D.C. 220, 222, 370 F.2d 242, 244 (1966), that there the trial court had failed to base its ruling on the "individualized considerations" set forth in the Luck decision [12] as bearing on the determination whether to admit evidence of prior convictions.[13]

9. See text at note 2, *supra*. It is also significant that the Bail Reform Act, with its liberalized provisions for pretrial release, was not then in effect. See also note 6, *supra*.

10. Since the Criminal Justice Act Plan for this Circuit now makes clear that counsel appointed by the Court of General Sessions have a duty to continue active representation until relieved, or until the charges are finally disposed of, see note 3, *supra*, vouchers claiming compensation under the Act can, and should, be rejected without payment unless it appears that this requirement has been met.

11. In issuing its ruling, the court said:
There is danger [of prejudice], no question about it. There is always that danger prior record might prejudice the jury, the [*sic*] but the jury is entitled to hear all the facts. The defendant is entitled to a fair trial and the Government is also entitled to its

day in court, also a fair trial, too, as a matter of fact.
So, you start off with that premise, both sides are entitled to present evidence fairly. I realize that if this record is brought out it might hurt the defendant, but this is a question of fact for the jury to decide. I don't think you have made a proper showing in this case. I am going to deny your request.

12. 121 U.S.App.D.C. at 157, 348 F.2d at 769. See Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936, 939–940 (1967).

13. In *Brown,* we were chiefly concerned with the trial judge's reliance on an "abstract belief" that defendants with prior convictions have a motive for perjury, in the effect prior convictions may have on the sentence for a subsequent conviction. We noted that not only does this idea misconceive the theory of impeachment by prior convictions, but also

■ Though we certainly agree with appellant that it would be desirable for District Judges to set forth for the record more fully than was done here the considerations which have induced a decision to admit prior convictions,[14] we are not prepared to say that the trial judge in this case abused his *Luck* discretion. The considerations deemed relevant by counsel were brought to the attention of the court, and presumably were weighed.[15] Moreover, we note that the question of the admissibility of appellant's prior convictions was not raised until *after* he had taken the stand and testified.[16] Certainly a trial judge in exercising his discretion under *Luck* is entitled to take into account whether counsel has made the judgment, and so advised his client, that the risk of prejudice is so great as to preclude the defendant's taking the stand in the absence of a ruling excluding evidence of prior convictions. The matter may appear in quite a different light to a judge when the defendant is no longer beset by the dilemma whether to give testimony in his own behalf (which may be crucial to his defense) or to refrain from giving such testimony in order to avoid the prejudicial effect of introduction of his prior criminal record.[17]

Since we find no abuse of discretion in the trial judge's admission of evidence of appellant's prior convictions, and no prejudice with respect to the matters discussed in Part I of this opinion, the conviction must be

Affirmed.

BAZELON, Chief Judge (concurring):

I concur in affirmance, and agree with much of the majority opinion. I have an additional observation to make regarding the preindictment delay issue, and my reasoning on the *Luck*[1] issue differs somewhat from that of the majority.

I

The majority finds no significant probability that appellant was harmed by the absence of the missing witness. Since I agree with this conclusion, I concur. However, the majority also notes[2] that defense counsel may have been less than diligent in seeking the missing witness.[3]

---

"should such an abstraction be permitted to prevail *Luck* would be rendered meaningless." 125 U.S.App.D.C. at 222, 370 F.2d at 244.

14. "The *Luck* opinion contemplated an on-the-record consideration by the trial judge whose action would be reviewable only for abuse of discretion, and that once the exercise of discretion appeared, the trial court's action be 'accorded a respect appropriately reflective of the inescapable remoteness of appellate review.' " Gordon v. United States, *supra* note 12, 127 U.S.App.D.C. at 346, 383 F. 2d at 939.

15. Had this case been tried after our decision in Gordon v. United States, *supra* note 12, the trial judge no doubt would have given consideration to the factors set forth therein, and might well have reached a different result, particularly as to the 1960 robbery conviction. See *id.* at 347, 383 F.2d at 940. Nevertheless, on the present record we find no reversible error. See Payne v. United States, 129 U.S.App.D.C. ——, 392 F.2d 820 (Mar. 5, 1968).

16. *Compare* Brown v. United States, *supra;* see Walker v. United States, 124 U.S.App.D.C. 194, 363 F.2d 681, 682 (1966).

17. The theory of *Luck* was that the trial judge has discretion to bar impeachment in situations where the "cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction." 121 U.S.App. D.C. at 156, 348 F.2d at 768.

1. Luck v. United States, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965).

2. Majority opinion, footnote 8.

3. Appellant was represented at trial by an attorney of the District of Columbia Legal Aid Agency, which maintains its own staff of investigators. It appears that the services of Legal Aid investigators may also be available without cost to other court-appointed counsel. See THE OPERATION OF THE CRIMINAL JUSTICE ACT IN THE DISTRICT OF COLUMBIA, Report of the Committee to Study

Though I do not understand my colleagues to suggest that the responsibility for locating the witness was entirely appellant's, I wish to dispel any possible notion that the government may leave indigent defendants to their own inadequate devices to find missing witnesses.

The question of the missing witness was raised by appellant at the hearing on the motion to dismiss the indictment, and again at trial. The government was thus well aware that appellant desired to locate her but had been unable to do so. In fact, the district court denied the motion to dismiss the indictment on the express assumption that the government would "exercise a muscle or so, and get this witness." [4] Despite this, the government apparently made little or no effort to find her.[5]

The "sporting" theory of justice is no longer appropriate in criminal cases; the stakes are far too high, and the sides too unequal.[6] Particularly in the case of an indigent defendant represented by court-appointed counsel, the government's resources are overwhelmingly superior.[7] Elemental principles of fairness and decency thus demand that the government lend needed assistance to obtain any witness sought in good faith by the defendant.

## II

I agree with the majority that one of the central concerns of the *Luck* decision was with the defendant who wishes to testify but fears that he will be prejudiced by evidence of prior convictions. In that situation past convictions should be excluded if the trial judge believes that "the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction." [8] Obviously there is no occasion for such a determination when the accused's story has already been told. But *Luck* also contemplates a decision whether "the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility." [9] The latter determination is plainly relevant and necessary whether or not the accused has already testified. Indeed, *Luck* itself in-

the Operation of the Criminal Justice Act, Junior Bar Section, Bar Association of the District of Columbia, at 27 (1967). It is imperative, of course, that all appointed counsel take full advantage of the services available through the Legal Aid Agency, the Criminal Justice Act, 18 U.S.C. § 3006A, and any other sources. See THE OPERATION OF THE CRIMINAL JUSTICE ACT IN THE DISTRICT OF COLUMBIA, *supra*, at 27–28 (pointing out that during 1966 few claims for compensation for experts, and none for investigators, were submitted by appointed counsel, and suggesting that "one of the most valuable provisions of the [Criminal Justice] Act [see note 7, *infra*] is lying virtually dormant").

4. Transcript of hearing on motion to dismiss indictment, p. 12.

5. The motion to dismiss the indictment was heard July 15, and the trial did not commence until September 1.

6. *See, e. g.,* Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Gregory v. United States, 125 U.S.App.D.C. 140, 143–144, 369 F. 2d 185, 188–189 (1966); Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F. 2d 287 (1966); Brennan, *The Criminal Prosecution: Sporting Event or Quest for Truth*, 1963 WASH.U.L.Q. 279; Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure,* 69 YALE L.J. 1149 (1960); Note, 60 COLUM.L.REV. 858 (1960).

7. Under the Criminal Justice Act, appointed counsel are not fully compensated for the value of their services. *See, e. g.,* United States v. Hanrahan, 260 F. Supp. 728 (D.D.C.1966). The Act does make separate provision for compensation for the services of investigators, experts, etc. 18 U.S.C. § 3006A(e). However, the Act limits compensation to be paid an individual investigator or expert to $300. While this amount may be adequate in some cases, it obviously cannot reconcile the great disparity which exists generally between the resources of the government and those of the indigent defendant.

8. 121 U.S.App.D.C. at 156, 348 F.2d at 768.

9. *Ibid.*

volved an objection made when the prosecutor sought to admit a prior conviction during the course of the accused's testimony.[10] I vote to affirm only because I believe there is a basis in the record for the finding that the prejudicial effect of appellant's criminal record did not far outweigh its probative value for impeachment.[11]

The majority suggests that, in gauging the prejudice from prior convictions, the trial judge may properly presume that the decision to take the stand before seeking a ruling under *Luck* reflects defense counsel's judgment as to the likelihood of prejudice. But there is no indication here that the court considered that factor, and in reviewing its exercise of discretion we should not consider it either. Moreover, even when the *Luck* issue is raised before the defendant takes the stand there is no guarantee that he will not thereafter testify, whatever the court's ruling. Thus it is not at all clear that counsel's timing in raising the issue reflects a judgment regarding prejudice.

There may well be sound reasons for requiring the *Luck* issue to be raised before the defendant testifies. For one thing, such a rule would insulate the trial judge's discretion from the influence of his own impressions as to the accused's credibility. Also, the accused would be better protected since in all cases the decision whether to testify would be made in light of the court's ruling. But here it plainly appears that counsel believed the *Luck* objection could properly be made at any time before the convictions were actually admitted. We should not infer a "waiver" without any basis for believing it to have been intelligent. Indeed, if there is a duty to raise the *Luck*

issue before the defendant takes the stand, I think we should consider whether that duty does not belong equally to the court and the prosecution.[12]

---

10. *Id.* at 154, 348 F.2d at 766.

11. I would observe, however, that the trial judge's statement, quoted in footnote 11 of the majority opinion, leaves room for doubt that such a finding was made, and certainly falls short of the "on-the-record consideration" contemplated by *Luck.* Gordon v. United States, 127 U.S. App.D.C. 343, 383 F.2d 936, 939 (1967). Nevertheless, the relevant considerations were brought to the court's attention,

and there is no indication that the judge misunderstood or misapplied the *Luck* standards. Compare Brown v. United States, 125 U.S.App.D.C. 220, 370 F.2d 242 (1966).

12. See Lewis v. United States, 127 U.S. App.D.C. 115, 381 F.2d 894 (1967); Stevens v. United States, 125 U.S.App. D.C. 239, 370 F.2d 485 (1966) (Fahy, J., dissenting).