Charles A. **HARLING,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 21345.

United States Court of Appeals
District of Columbia Circuit.

Argued April 22, 1968.

Decided June 27, 1968.

Petition for Rehearing Denied
Aug. 28, 1968.

Certiorari Denied Jan. 27, 1969.

See 89 S.Ct. 725.

---

Mr. Noel H. Thompson (appointed by this court), Washington, D. C., for appellant.

Mr. Daniel J. Givelber, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BASTIAN, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

PER CURIAM:

Early on the morning of October 24, 1965, Mr. and Mrs. Arnold Zander had just returned home when three young men, one brandishing a gun, approached them and demanded their money. Over protests by the Zanders, the robbers snatched Mrs. Zander's purse tearing the strap which had been looped over her arm, and tore Mr. Zander's trousers' pocket removing a check book and fold-er. Also taken from Mr. Zander was a money clip and money. Stephen Zander, the son of the robbery victims, had been inside the house during these events but upon hearing his father's protestations he opened the door and saw his parents and the three young men. Immediately, the robbers fled. Stephen pursued, losing ground to the faster felons, and Mr. Zander followed, losing ground to both his son and the culprits. During the brief chase one of the robbers fired three shots at Stephen.

The final pistol shot was heard and seen by police officer Bloodworth and Mr. Peckham, an attorney, both of whom were a block from the Zander's residence at the scene of a traffic mishap. Officer Bloodworth testified that he noticed an automobile barely moving in his direction and saw two young men running, jump into the rear seat. The officer testified that the driver of the get-away car turned out to be John Epps and the two passengers, Kenneth Gray and Tycho Veney. Officer Bloodworth also testified that he saw appellant running after the get-away car, saw him pause and shoot at Stephen Zander, and saw him enter the front seat and crouch down "as though to get out of view." The officer then drew his service revolver and, without firing, brought the situation under control. Mr. Peckham corroborated officer Bloodworth's account of the incident. Soon Stephen Zander, who had never lost sight of the fleeing felons, appeared. A little later, Mr. Zander, the robbery victim, came to the scene and identified appellant as one of the culprits. Mr. Zander also identified articles that had been stolen from him which were found in the get-away car and on the street at the point of apprehension.

■ Appellant, Veney, Epps, and Gray were all indicted for the robberies and the assault with a dangerous weapon. Appellant was found guilty in a trial by jury and was sentenced to three to ten years in prison for each robbery and for the assault, the sentences to run concurrently. Appellant's principal

claim on this appeal is that he was deprived of his right to a speedy trial.[1]

Appellant's preliminary hearing was on November 9, 1965, and two months later, on January 3, 1966, he was indicted. On January 14, appellant was arraigned and the joint trials of Veney, Gray, and appellant were scheduled for March 3.[2]

On February 28, the first of a series of appallingly numerous continuances was granted by the court with the consent of the Government.

The February 28 continuance was for the purpose of affording defendant Veney a mental observation since a question arose as to his competency to stand trial. In May, Veney was found not competent to be tried and the case was set for trial on June 15. Another continuance, either at the request of the Government or defendant Veney moved the trial date to June 30. At that time, appellant Harling secured a one week continuance, and on July 7, 1966, he consented to a request by defendant Gray for a further continuance and reassignment of the case. At this time defendant Veney was severed.

Seven and a half months later, apparently due to some administrative mix-up, the case had still not been placed on the ready calendar.[3] At that time, on February 24, 1967, appellant's first motion for dismissal for denial of a right to a speedy trial was argued and denied, although the case was moved to the ready calendar. From that point on, appellant did not consent to or request any of the delays which followed.

Nevertheless, the case was continued at the request of either co-defendant Gray or the Government and with the consent of both on March 21 (Gray), April 6 (unknown), April 12 (mutual), April 24 (mutual), April 25 (mutual), April 26 (mutual), May 2 (Government), May 4 (Gray), May 8 (mutual), May 9

---

1. Contrary to the testimony of officer Bloodworth and Mr. Peckham, appellant denied having fired the pistol at Stephen Zander. Appellant contends that the failure of the police to fingerprint the pistol renders his conviction defective. We disagree.

2. Epps pleaded guilty to one count of robbery at the arraignment on January 14.

3. District Court Local Rule 87 provides in part:

"(h) The United States Attorney will certify to the Assignment Commissioner cases which are ready for trial. A ready case will be placed upon a Ready Calendar to be established and maintained by the Assignment Commissioner. Copies will be furnished each week to the Chief Judge and to the United States Attorney. Cases will be listed on that calendar chronologically by date of certification and the calendar will reflect whether or not the defendants are in jail or on bail. Once a case reaches the Ready Calendar it will remain there until tried. Applications for continuances prior to assignment out for trial (see Paragraph j) may be made only before the Chief Judge and except in cases of emergency such applications will be in writing. Applications for continuance after assignment out for trial will be made to the judge to whom assigned. Continuances will be granted only for good cause shown. When a continuance is granted the case will not revert to the bottom of the trial list but will be reinserted in the list as close as possible to its original position. If the continuance is to a date certain, such case shall be placed at the top of the calendar for trials on said date.

\* \* \* \* \*

"(j) Cases will be assigned to trial parts as nearly as practicable in chronological order with an overriding preference, however, to be given to jail cases.

\* \* \* \* \*

"(m) On the first court day of each month, the Assignment Commissioner shall submit to the Chief Judge a list of all cases on the Ready Calendar as to which two or more continuances have been granted and by whom such continuances were requested. If the Chief Judge determines that any case is not being given appropriate attention in accordance with the provisions of Rule 48(b) of the Federal Rules of Criminal Procedure and the Sixth Amendment to the Constitution, he will call that matter to the attention of the United States Attorney to the end that the case be set for trial forthwith or dismissed or otherwise disposed of as justice may require."

(mutual), May 10 (mutual), May 11 (Government), May 15 (Gray), May 16 (Gray), May 17 (Government), May 18 (mutual), May 22 (Government), May 23 (Gray), May 29 (Gray), May 31 (Gray), June 1 (Gray), and June 5 (Government). On June 6, 1967, defendant Gray, without advance notice to appellant, pleaded guilty. During this period of about four months, appellant relied on Government counsel's assurance that the case had been put on the ready calendar and he did not consent to nor was he even informed of the continuances. On June 12, the Government again requested and received a continuance. Trial was then set for August 7. On July 3, 1967, another motion for dismissal for denial of a speedy trial was argued and denied. On August 7, 1967, the trial began and on August 8, appellant was convicted.

It is with disturbing frequency that we have been called upon in recent times to adjudicate serious questions involving the right to a speedy trial. We have noted that there is "no touchstone of time which sets a fixed maximum period that automatically requires application of the Sixth Amendment,"[4] but have also indicated that periods of delay from arrest to trial which exceed a year raise a claim with "prima facie merit."[5]

The reasons for the delays in bringing appellant to trial were varied. Court congestion and administrative confusion took their toll, and the extraordinarily heavy burdens on the prosecutor accounted for the Government requesting numerous postponements. The busy schedule of defendant Gray's counsel also extended the trial date on many occasions.

■ In the beginning, appellant consented to the delays and even requested one. But the last time such consent was given was thirteen months before trial.

On February 24, 1967, sixteen months after arrest, and almost six months before trial, appellant moved to dismiss the indictment for lack of a speedy trial. The Government has argued that there were other steps appellant could have taken to expedite his case. Without deciding whether or in what cases a defendant must draw attention to protracted delays before he can assert a claim of denial of a speedy trial, we reject the Government's contention that in addition to the motions to dismiss for lack of speedy trial, appellant can be disqualified for failure to file separate motions to expedite his trial or motions to sever his case from that of his stalling co-defendant. In our view, appellant did all that can reasonably have been asked of him. If the further delay of almost six months, together with numerous deliberate continuances, reflects a failure of diligence it must be attributed to the United States Attorney who under the calendaring rules had much greater latitude and responsibility to assure prompt consideration of criminal charges.[6]

■■ Although responsibility for the unjustifiable delays in this case cannot be laid to the appellant, we affirm his conviction. It is settled that infringement of the right to a speedy trial depends upon several factors, including not only the length of the period between arrest and trial, the reasons for the delay, and the blameworthiness of the prosecution and the defense, but also the prejudice to the defendant. There may be cases where the length of the delay alone will be such as to establish prejudice as a matter of law, but we do not believe that point has been reached here. Even a slight showing of possible prejudice, inflamed by the fact of long and unjustified delay, might have entitled defendant to relief from continued jeopardy. On the facts of this case, however, we fail to detect even a wisp of

4. Hedgepeth v. United States, 124 U.S. App.D.C. 291, 294, 364 F.2d 684, 687 (1966).

5. Hedgepeth v. United States, 125 U.S. App.D.C. 19, 365 F.2d 952 (1966);

Hedgepeth v. United States, 124 U.S. App.D.C. 291, 364 F.2d 684 (1966).

6. See note 3 supra.

prejudice. For most of the period of delay, appellant remained free on bail.[7] Appellant has not made any claim that his defense at trial was in any way impaired by the delay. No proof was lost and the Government's case was exceptionally strong. Under these circumstances, there is no call for reversal in the interest of justice and the conviction is.

Affirmed.

---

7. Thus appellant made no showing of the kind of prejudice that was held to require reversal in McNeill v. United States, No. 21570 (D.C.Cir. June 4, 1968).