**George SMITH, Jr., Appellant,**
**v.**
**UNITED STATES of America,**
**Appellee.**

**Johnny B. ROZIER, Jr., Appellant,**
**v.**
**UNITED STATES of America,**
**Appellee.**

**Nos. 22157, 22158.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 22, 1969.

Decided May 7, 1969.

Petition for Rehearing Denied
June 24, 1969.

Mr. Edwin Jason Dryer, Washington, D. C. (appointed by this court) for appellants.

Mr. James A. Treanor, III, Asst. U. S. Atty., with whom Messrs. David G.

---

Bress, U. S. Atty., Frank Q. Nebeker and Nicholas S. Nunzio, Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT, LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

The appeal raises questions as to the validity of cumulative sentences and denial of speedy trial.

I

The first count of the indictment charged defendants assaulted Julia Perkins on February 12, 1967, with intent to kill. The second count charged defendants with assault with a dangerous weapon. Each defendant was found guilty and sentenced to a term of 5 to 15 years on count 1, and 40 months to 10 years on count 2, sentences to run consecutively.

The evidence established a brutal crime, and it is not hard to understand why the trial judge imposed maximum sentences. However, we think appointed counsel is correct in his claim that the maximum permitted by law consisted of sentences that were to be concurrent rather than consecutive.

In Ingram v. United States, 122 U.S. App.D.C. 334, 353 F.2d 872 (1965), it was held improper to provide consecutive sentences for assault with intent to kill and assault with a dangerous weapon where there was but one assault. The court, after reviewing the legislative history, concluded that Congress did not intend one transaction of this character to bear two consecutive sentences.

In Irby v. United States, 129 U.S.App. D.C. 17, 390 F.2d 432 (1967 *en banc*), cumulative sentences were upheld for robbery and housebreaking. But that was a case that involved crimes of historically different conception, protecting distinctly different societal interests, and affording protection against markedly different dangers.

The Government argues that *Ingram* is inapplicable here because there were two different assaults, the first involving a curling iron and hammer, the second involving throwing the victim down a flight of stairs. The fact that a criminal episode of assault involves several blows or wounds, and different methods of administration, does not convert it into a case of multiple crimes for purposes of sentencing. As to the defendants' intention, the only testimony of intent to kill related to a defendant's exclamation during the first phase of the assault.[1]

While cumulative punishments for these crimes may be imposed in an appropriate case, more is required for such a result than the kind of record before us here. It must be clear from the record, taking into account the evidence and the findings of the trial judge,[2] that the actions and intent of defendant constitute distinct successive criminal episodes, rather than two phases of a single assault.

II

A speedy trial issue was raised at trial by appellant Smith. He was arrested and detained on February 12, 1967. The docket shows that in May, 1967, he was indicted; and in June, 1967, his motion for release on recognizance was denied. In January, 1968, appellant filed a motion for release on personal bond or for a speedy trial. The District Court denied leave to file the motion for bond, but granted the motion for a speedy trial. The trial date was set and trial was begun in March, 1968.

This incarceration without trial for 13 months is all too long, especially when no reason for it appears. Delays prior to trial are intolerable, for society as well as the defendants. Such delays help breed crime. While the delay here is not so long as to establish, in and of it-

---

1. We think there is sufficient evidence of such intent to support the verdict.

2. *See* Irby v. United States, *supra*, 129 U.S.App.D.C. at 20, 390 F.2d at 435.

self, a denial of right to speedy trial,[3] it is long enough to require us to give close scrutiny to the issue.[4] A burden rests on the Government in such cases, and here the Government adduced no explanation for the delay.

■ It does not follow, however, that the relief required here is dismissal of the indictment. The District Court did grant appellant's motion for a speedy trial—which had the effect of terminating prejudice to the person of the defendant in detention. We need not consider what would have been the result if such expedition had been sought and denied. Although defense counsel orally stated to the trial judge that he had made a motion to dismiss the indictment prior to trial, we did not locate this in our combing of the record. Assuming, however, that such a motion was made, we do not find error in its denial.

The issue before us is whether the trial judge was required to dismiss the indictment. We do not think such dismissal is required, at least for delay of the extent before us, unless defendant makes out a prima facie case of prejudice to his defense—not necessarily showing conclusively that the defense was prejudiced, but at least making a showing of a reasonable likelihood of such prejudice, a showing not negatived by rebuttal of the prosecution.[5]

On appeal, counsel raises a claim of prejudice due to the absence now of one Elsie Brown, who was in the apartment at the time. Apparently, however, no such claim was put forward by trial counsel. Elsie Brown talked to the police officer, but we are not advised that defense counsel requested and was unable to obtain her statement. The police officer called by the Government testified he had not seen her since the date of the offense and that she had moved away— testimony presumably adduced to avoid a

missing-witness implication. If she moved soon after the offense she would not have been available even if trial had been held within a few months. While it is not impossible, it seems unlikely that she would have given testimony supporting Smith's claim that he was asleep throughout this brutal assault. When co-defendant Rozier gave testimony—that he pushed the victim who fell on some glass—he said that Elsie Brown had left the room before the encounter to go to the bathroom on a lower floor. While the long delay involved, not justified by the prosecution, would impel a court to dismiss on a showing of reasonable likelihood of prejudice to the defense, the facts as outlined herein do not provide the requisite predicate.

We have considered whether the time has come to adopt a rule that for persons in detention, a delay prior to trial of more than one year, not attributable to the defense, automatically calls for dismissal of the indictment, due to prejudice to the person. Certainly there must be some limit on such delay, and an indictment may be dismissed with no showing of prejudice to the defense, as appears from the extreme case that came before the court in Petition of Provoo, D.Md., 17 F.R.D. 183, affirmed 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed 761 (1955).

■ There is at present, however, an unusual strain upon prosecutorial and judicial resources. The legislature has been apprised of the problem, and we may appropriately accommodate our doctrines to permit time for provision of resources necessary to dispose of criminal cases without denial of fundamental rights. For this reason, we have decided not to rule that prejudice to the person by detention for a year automatically leads to dismissal. A delay of that duration does, however, as we have noted, shift to the prosecution a heavy burden of showing that there was no prejudice

---

3. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

4. Hedgepeth v. United States, 125 U.S. App.D.C. 19, 21, 365 F.2d 952, 954 (1966).

5. Hedgepeth v. United States, *supra* note 4, 125 U.S.App.D.C. at 22, 365 F.2d at 955.

to the defense. The prosecution takes a double risk in delay: first, the risk that witnesses will become unavailable for any one of a number of reasons; and second, the risk that if the delay creates a reasonable likelihood of prejudice to the defense, the delay will be held to preclude a fair trial and to require dismissal of the indictment.

The cases will be remanded for resentencing.

So ordered.

J. SKELLY WRIGHT, Circuit Judge (concurring in part and dissenting in part):

I concur in Part I of the court's opinion. However, because I believe appellant Smith was denied his constitutional right to a speedy trial, I dissent from affirmance of his conviction.

Smith was arrested February 12, 1967. He was brought to trial March 13, 1968. During the intervening 13 months, he was in jail. No part of the 13-month delay was attributable to the conduct of Smith or his counsel, and the Government admits it can offer no explanation for the delay.[1] These facts, standing alone, in my opinion constitute a violation of Smith's Sixth Amendment rights and require dismissal of the indictment against him.

As the Supreme Court has held, the right to a speedy trial is as fundamental as the other rights guaranteed by the Sixth Amendment.[2] Along with the right to bail implied by the Eighth Amendment, the speedy trial guarantee safeguards the fundamental concept of our criminal jurisprudence—that a man is presumed innocent until proven guilty.

That concept has little meaning when the defendant presumed innocent of crime can be incarcerated indefinitely without justification, exactly as if he had been properly convicted and sentenced. Among the evils against which the speedy trial guarantee is aimed, the Supreme Court has placed first on the list "undue and oppressive incarceration prior to trial."[3]

It is clear from our first *Hedgepeth* decision that a lapse of more than a year between arrest and trial raises a speedy trial claim of *prima facie* merit.[4] In that case, we examined the circumstances of the delay and found that much of it was attributable to the defendant. The *two months* of that delay which was clearly attributable to the Government was acquiesced in by the defendant. In these circumstances, the court found no speedy trial violation. The court did make the important observation, particularly apposite in this case, that

> "the very assumption of the Sixth Amendment is that unreasonable delays are by their nature prejudicial. It is not generally necessary for the defendant to demonstrate affirmatively how he has been prejudiced by an unreasonable delay. * * * "[5]

In our second *Hedgepeth* decision,[6] 14 months elapsed between arrest and trial. Much of the delay was attributable to or acquiesced in by appellant's counsel, leaving only three months clearly attributable to the Government. Yet these three months of unnecessary delay so troubled the court that it was able to affirm only under the unusual circumstances of the case—Hedgepeth had already been convicted of another crime so that he would have been incarcerated in any event.

---

1. In its brief the Government states:
   "The record gives no hint of the reason for the thirteen month delay in this case, nor do the records of the District Court Assignment Office. Those records indicate that the case was put on the ready calendar on March 7, 1968 when trial was set for a date certain of March 13, 1968."

2. Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

3. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773 (1966).

4. Hedgepeth v. United States, 124 U.S. App.D.C. 291, 293, 364 F.2d 684, 686 (1966).

5. 124 U.S.App.D.C. at 294 n. 3, 364 F.2d at 687 n. 3.

6. Hedgepeth v. United States, 125 U.S. App.D.C. 19, 365 F.2d 952 (1966).

**1124**

In our *Harling* case,[7] 22 months elapsed between arrest and trial. The defendant consented to many of the early delays, and even requested one. But for the last 13 months before trial (the exact period involved in this case), he gave no sign of consent to the delay, and indeed he moved for a speedy trial during this time. The court found the delay "unjustifiable"[8] and stated that "[e]ven a slight showing of possible prejudice" might have led to dismissal of the indictment.[9] But the court found not "even a wisp of prejudice,"[10] either to appellant's case or to his person, for in *Harling*, unlike the present case, the defendant was out on bail during most of the period of delay.

Finally, in our *McNeill* case,[11] the defendant was incarcerated for the entire two and a half years between his arrest and his trial. The court found only six months of that time to be unequivocally attributable to the Government, and yet found a speedy trial violation requiring dismissal of the indictment. No prejudice to the defendant's case was found by the court. The court rather emphasized that "the burden is on the Government, not the defense, to bring a case to trial. The record clearly establishes that the Government has not borne its burden

of establishing that the appellant's right to a speedy trial has not been abridged."[12]

Reading these cases together, I think they establish certain minimum guidelines. Delays of more than a year are to be closely scrutinized.[13] Certainly delays of more than a year attributable to the Government are unjustifiable, and require dismissal of the indictment where adequate prejudice appears.[14] There are two kinds of relevant prejudice: prejudice to the defendant's ability to defend against the charge, and prejudice to his person. Prejudice to the person takes the milder form of anxiety and stigma when the accused is released on bail. Its more virulent form, more oppressive to the accused and more destructive of the presumption of innocence, is extended pre-trial incarceration.

The cases also indicate that an additional factor to be considered is the diligence of the accused in seeking a speedy trial.[15] Where the defendant is released pending trial, this factor can be taken seriously; a defendant at large may have little desire for a speedy trial, and the Government may be justified in assuming that he does not assert his right unless he so indicates.[16]

7. Harling v. United States, 130 U.S.App. D.C. 327, 401 F.2d 392 (1968).

8. *Id.*, 130 U.S.App.D.C. at 330, 401 F.2d at 395.

9. *Ibid.*

10. *Id.*, 130 U.S.App.D.C. at 330–331, 401 F.2d at 395–396.

11. McNeill v. United States, No. 21,570, decided June 4, 1968 (unreported).

12. *Id.*, slip opinion p. 2.

13. This does not mean that delays of less than a year may go by without scrutiny. In King v. United States, 105 U.S.App. D.C. 193, 265 F.2d 567, *cert. denied*, 359 U.S. 998, 79 S.Ct. 1124, 3 L.Ed.2d 986 (1959), this court sitting en banc divided 5–4 on the question whether a 140-day delay between arraignment and trial constituted denial of a speedy trial. And in Smith v. United States, 118 U.S.App.D.C. 38, 331 F.2d 784 (1964), the court *en*

*banc* divided on the question whether a delay of 102 days between indictment and trial constituted a denial of a speedy trial.

14. This is the period which I think is unequivocally inferable from our cases. I personally consider six months' delay too long in the case of a defendant held in jail. As I said, dissenting, in Smith v. United States, *supra* Note 13, 118 U.S.App.D.C. at 47, 331 F.2d at 793:
"The Government argues that, considering calendar congestion and related evils, six months really is not an unreasonable time to spend in jail awaiting trial. That appraisal, of course, depends on whose time is being spent. * * * "

15. *See, e. g.*, Hedgepeth v. United States, *supra* Note 4, 124 U.S.App.D.C. at 294, 364 F.2d at 687.

16. The extreme version of this contention is that the defendant invariably waives his

The factor of defendant diligence should have little if any weight, however, where a defendant is incarcerated awaiting trial. I believe we can with every justification presume that the jailed defendant wants a speedy trial; any supposed waiver of the right in such a case should be explicit, knowing and intelligent. The Federal Rules place special duties on the Government to explain and justify all delays in trying incarcerated defendants, and provide explicitly that the situation of such defendants be kept constantly before the courts.[17] Thus I would not allow the Government to claim waiver of speedy trial rights, or even mitigation of delay, from the silence of an incarcerated defendant.

Applying these guidelines to the present case, I can come to no conclusion but that Smith's conviction should be reversed and his case remanded to the District Court with instructions to dismiss the indictment. No explanation at all appears for the length of the pre-trial delay. The 13 months began with a period of three months between arrest and indictment—in itself a delay long enough to have seriously troubled this court in prior cases.[18] From the record, it appears likely that Smith lacked counsel between preliminary hearing and indictment [19]—a circumstance which we have previously found to be an aggravating factor in delay, and a violation of the Criminal Justice Act.[20] It is true that

right to speedy trial unless he promptly asserts it by actual motion. *See* United States v. Lustman, 2 Cir., 258 F.2d 475, 478, *cert. denied*, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). The "waiver" theory has been cogently criticized by the commentators, *see* 8A J. W. Moore, Federal Practice ¶ 48.04 [1] (Cipes ed. 1968), and has been rejected by the American Bar Association, *see* A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial 17 (1967) (adopted by the House of Delegates February 19, 1968). The theory is inconsistent with general doctrine governing waiver of constitutional rights. *See* Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

17. Rule 46(h), Fed.R.Crim.P., provides: "The court shall exercise supervision over the detention of defendants and witnesses within the district pending trial for the purpose of eliminating all unnecessary detention. The attorney for the government shall make a biweekly report to the court listing each defendant and witness who has been held in custody pending indictment, arraignment or trial for a period in excess of ten days. * * * As to each defendant so listed the attorney for the government shall make a statement of the reasons why the defendant is still held in custody."

18. Williams v. United States, 129 U.S. App.D.C. 332, 394 F.2d 957 (1968) ; Hood v. United States, 125 U.S.App.D.C. 16, 365 F.2d 949 (1966). The Presi-

dent's Crime Commission noted that the period between arrest and indictment could be reduced to two weeks by the expenditure of less than $50,000 per year for additional grand jury and associated support resources. President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 258 (1967).

19. The record shows that Smith was represented by counsel at his preliminary hearing on February 13. Though he languished in jail until mid-May awaiting grand jury action, no bail motion was made on his behalf. If he had been represented, such a motion surely would have been made. This court has noted and condemned the practice of appointing counsel only for the preliminary hearing so that defendants are unrepresented during the pre-indictment period. Williams v. United States, *supra* Note 18, 129 U.S.App. D.C. at 333–334, 394 F.2d at 958–959.

20. *Ibid.* The Criminal Justice Act, 18 U.S.C. § 3006A(c) (Supp. IV 1965– 1968), provides: "A defendant for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate or court through appeal. * * * *" If Smith had had counsel during the pre-indictment period, I would be more confident in agreeing with the majority that the absence of the witness Elsie Brown, who apparently disappeared during that period, could not reasonably have prejudiced Smith's case.

Smith did not move for a speedy trial until the 11th month of his incarceration,[21] at which point his motion was granted, but as I have indicated I do not think the Government can profit from the silence of incarcerated defendants.

I believe my colleagues in the majority are united with me in the judgment that the delay in this case was unjustifiable. We differ only in the remedy. I recognize that the appellate remedy for denial of a speedy trial is a drastic one. The indictment is dismissed, and the defendant goes free, immune from further prosecution. For this reason it is not a remedy to be invoked lightly or thoughtlessly.

In the past, dismissal of the indictment has usually been invoked to redress serious prosecutorial misconduct involving the deliberate or negligent oppression of an individual defendant.[22] Here we have no such case. We have no reason to believe that the oppression of Smith in this case was the result of the deliberate or negligent misconduct of our overworked prosecutors. It appears rather to have been the result of the failure of the public and its servants to provide adequate resources for the criminal process. Normally, the allocation of public resources is not the concern of the judiciary. But where, as in this case, such a misallocation leads to the almost blind and mechanical obliteration of a fundamental guarantee against oppression, the drastic remedy is at last called for.[23]

I respectfully dissent from affirmance of Smith's conviction in this case.

---

21. Remarkably, when this motion finally came, it was made by Smith *pro se*, though he was theoretically represented during the entire post-indictment period by his appointed trial counsel.

22. *See, e. g.*, Klopfer v. North Carolina, *supra* Note 2; Petition of Provoo, D.Md., 17 F.R.D. 183, *affirmed*, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955).

---

23. *Compare* King v. United States, *supra* Note 13, 105 U.S.App.D.C. at 195, 265 F.2d at 569: "If the legislature were to refuse to install sufficient judicial machinery to perform the judicial tasks, it might be necessary to turn some accused persons loose."