UNITED STATES of America

v.

Thomas W. BISHTON, Appellant.

No. 71–1307.

United States Court of Appeals,
District of Columbia Circuit.

April 17, 1972.

Messrs. John J. Carmody and Frank H. Strickler, Washington, D. C., were on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry, John F. Evans, and William H. Schweitzer, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant was found guilty of soliciting, and of accepting, a bribe in violation of 18 U.S.C. § 201(g) (1970), fined $2,000.00, and given a suspended sentence of six to eighteen months. His principal claim on appeal presents the recurring problem of the right to a speedy trial.

On January 17, 1969, appellant, then division chief of the District of Columbia Sewer Operations Division, allegedly approached one Glen Carrico, an employee of the Division, and asked for a payment of $400.00 in return for appellant's approving Carrico's promotion to a higher job.[1] Although Carrico refused, he was in fact promoted on February 23, 1969. Nevertheless, appellant continued to make demands and threats for payment, until Carrico finally alerted the FBI and the Metropolitan Police. The police arranged for Carrico to give appellant $100.00 in marked bills at work on the morning of April 24, and the transaction was to be both recorded by a device attached to Carrico and observed by police officers nearby. When the payment took place as planned, the police promptly arrested appellant and advised him of his rights, whereupon appellant handed the money to the police and said, "This is gratitude for you. I paid $400.00 out of my own pocket to get Glen this promotion." Appellant then expressed concern over the effect the incident would have on his wife if it were reported in the papers.

Appellant was initially charged by information in the District of Columbia Court of General Sessions (now the Superior Court) under 22 D.C. Code § 702 (as amended) (1967 ed.), which provides in pertinent part:

> Every person who . . . receives . . . any money . . . from any person for . . . procuring . . . any . . . promotion in office from the Commissioners of the District of Columbia, or from any officer under them . . . shall be deemed guilty of a misdemeanor.

The case was called to trial on July 26, 1969, but was dismissed on the grounds that the Commissioners of the District of Columbia had been abolished in the reorganization of the District in 1967, and thus the information failed to charge a crime. The Government appealed to the District of Columbia Court of Appeals, which affirmed on April 13, 1970. United States v. Bishton, 264 A. 2d 139. Three months later, on July 22, 1970, appellant was indicted by a federal grand jury for the same offense under the federal statute. On September 15, 1970, and again immediately before trial, appellant moved to dismiss for lack of speedy trial. The motion was denied on both occasions, and the case was tried on January 4–5, 1971, some twenty months after his arrest.

■■ While fundamental to our notions of criminal justice, the right to speedy trial has proven to be one of the most difficult constitutional protections to apply to the circumstances of particular cases. The Supreme Court has recognized that the right is necessarily relative, requiring a balance between the interest of the public in bringing criminals to justice and the interest of the citizen in being free from oppressive and vexatious delay. Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L. Ed. 950 (1905). In each case, therefore, courts must carefully examine the totali-

---

[1] Carrico testified that appellant had told him that he, appellant, had already paid someone in the personnel department to secure Carrico's promotion and that Carrico would have to repay appellant if the promotion were to be approved.

ty of circumstances surrounding the delay, and must consider "the length of the delay; reasons for the delay; diligence of prosecutor, court and defense counsel; and reasonable possibility of prejudice from the delay." Hedgepeth v. United States, 125 U.S.App.D.C. 19, 21, 365 F.2d 952, 954 (1966). Weighing these factors in this case, we conclude that appellant's right to speedy trial was not unacceptably abridged.

■■■ The first three months after appellant's arrest were spent in preparation for trial, and there is no indication that appellant ever desired or sought expedition at that time. During the following eight months, the case was pending in the District of Columbia Court of Appeals, and thus beyond the power of the prosecutor to expedite. Courts, of course, are not excluded from the obligation to give defendants a speedy trial. But the function of appellate courts necessarily casts the delay attendant upon their deliberations in a somewhat different light, and the time spent on appeals is not generally included for purposes of calculating the period of delay in prosecution.[2] The right of the Government to appeal decisions in the defendant's favor before jeopardy attaches is designed to protect the interest of society in lawfully prosecuting criminal offenders, and, while such an appeal is not at the defendant's instance, the fact that he is legally, albeit conditionally, a free man minimizes the oppressiveness of the attendant delay.

We do not intimate that the delay caused by appeals by the Government may never constitute denial of a defendant's right to speedy trial. Whenever the Government's action at any stage of the proceeding indicates bad faith, neglect, or a purpose to secure delay itself

or some other procedural advantage, the resulting delay is not justified. Thus, in Petition of Provoo, 17 F.R.D. 183 (D.Md.1955), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761, the court dismissed a case brought to trial four and a half years after the indictment and nine to twelve years after the alleged offenses:

> "The serious delay in this case was . . . caused by the deliberate act of the government in bringing the case in New York in the first place, when the government must have known that venue in New York was at best doubtful, and took the chance of the supposed advantage to the government of proceeding in New York. . . . [W]here the government chooses to proceed in a certain district of doubtful venue, when venue in another case is clear, the government must be held responsible for the effects of its election." Id. at 201.

See also Hanrahan v. United States, 121 U.S.App.D.C. 134, 348 F.2d 363 (1965).

■■ While appellant would characterize as similarly unjustifiable the Government's initial decision to prosecute in the Court of General Sessions under the D.C. Code rather than in the federal court under the U.S. Code, and its decision to appeal the dismissal in the former court rather than immediately to seek a federal indictment, we do not agree that these decisions reflected arbitrary, negligent, or purposefully oppressive behavior on the part of the Government. See Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Smith v. United States, 118 U.S.App.D.C. 38, 41, 331 F.2d 784, 787 (1964) (en banc). The District of Columbia Court of Appeals itself recognized that the flaw it found in the indict-

---

2. See, e. g., American Bar Association Project on Minimum Standards of Criminal Justice, Standards Relating to Speedy Trial, (Approved Draft, 1968), which provides, in Section 2.3, that excluded from the computation of the time for trial shall be:

> "The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on competency and the period during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals, and trial of other charges."

ment was highly technical. Thus, unlike the court in Petition of Provoo, *supra,* we cannot say that the Government's decision to proceed in the Court of General Sessions was "at best doubtful," or that it "must have known" that it would not prevail on appeal.

■ The federal indictment was brought three months later. While the record supplies no explanation for this delay, it is significant that during this time appellant was a free man against whom no prosecution was pending. The Supreme Court has recently held that the right to speedy trial attaches when a prosecution has begun, either by indictment or by the "actual restraints imposed by arrest." United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). While it is true that one prosecution for the offense began in April, 1969, that prosecution was finally terminated by the DCCA in April, 1970; and the rationale of *Marion,* although perhaps not applying with the same force, has relevance to the period between the end of one prosecution and the beginning of another, even when the two arise from the same occurrence. When a citizen stands neither arrested nor indicted for an offense, he "suffers no restraints on his liberty and is not the subject of public accusation; his situation does not compare with that of a defendant who has been arrested and held to answer." United States v. Marion, *supra,* at 321, 92 S.Ct. at 464. Even before arrest or indictment, of course, a defendant may claim the right to be free from purposeful or oppressive delays in instituting the prosecution that tend to deprive him of a fair trial. United States v. Marion, *supra,* at 324, 92 S.Ct. 455. In the circumstances of this case, however, there is no indication that this lapse of three months had such an effect.

Following the federal indictment, the case proceeded with reasonable alacrity, and the record suggests that the delays that did occur were at the instance, or with the acquiescence, of appellant. For example, on the very eve of trial appellant's counsel introduced a motion to dismiss based on an entirely new theory of law. The Government strenuously objected to any delay in the proceedings that consideration of this last-minute motion would entail:

THE COURT: We set this case two months ahead so that everybody could be ready to go, and now to hit me with a last-minute motion that has nothing but the effect of delay doesn't make me very happy. I am ready to throw the case over unless you are ready to go forward.

ASSISTANT U. S. ATTORNEY: We are ready to go forward, your Honor. . . .

APPELLANT'S COUNSEL: Your Honor, I feel very bad about the delay, but I don't think I can withdraw the motion.

■ The foregoing analysis of the delays in this case reflects no neglect, indifference, or lack of reasonable diligence on the part of the Government. Turning then to appellant's claim of prejudice, we note that (1) at all times he was free on bond, (2) he has never claimed the unavailability of any witness as a result of the delay, (3) his preparation for the first trial in 1969 diminished the likelihood that his ability or the ability of his witnesses to recall the critical facts had irreparably faded, and (4) the case against him, in light of his remarks to the arresting officers, was strong. We have intimated that when the delay in prosecution exceeds twelve months, prejudice to the defendant is presumed and need not be affirmatively shown. *See* United States v. Holt, 145 U.S.App.D.C. 185, 448 F.2d 1108, cert. denied, 404 U.S. 942, 92 S.Ct. 292, 30 L. Ed.2d 256 (1971); Harling v. United States, 130 U.S.App.D.C. 327, 401 F.2d 392 (1968), cert. denied, 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 711 (1969). But even the prejudice which is presumed to inhere in all cases where the delay is particularly long must be weighed against the other considerations we have mentioned. If this were a case

where the delays could not be explained or justified by the Government, or where the defendant's ability to present a defense was demonstrably affected, or where the Government's case on the merits was close, then the balance between the interest of the public and the protection of the individual might be different. Here, however, the balance is otherwise.

■ The remaining claims of error are without merit. Appellant first argues that the second count of the federal indictment, charging him with receiving a bribe, fails to state a crime under 18 U.S.C. § 201(g) because, in his submission, that section only prohibits receiving money for actions which are currently or may in the future be pending before a public official, and does not apply to acts already completed. Although his precise line of reasoning is difficult to follow, we have no doubt that Congress intended to reach demands for and acceptances of money for acts already performed, and that the statutory prohibition is not so vague that men must necessarily guess at its meaning. The statute prohibits the receipt of money "for or because of any official act *performed or to be performed,*" 18 U.S.C. § 201(f) (emphasis added). So defined, the statute clearly reaches the alleged transaction here. *See* United States v. Irwin, 354 F.2d 192, 196 (2d Cir. 1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966).

■ Second, appellant contends that the attachment of the audio-surveillance device to Carrico rendered the subsequent arrest invalid and all evidence of the transaction inadmissible. Conceding that the use of the device was not improper under the Fourth Amendment, United States v. White, 401 U.S. 745, 91

S.Ct. 1122, 28 L.Ed.2d 453 (1971); Hoffa v. United States, 385 U.S. 293, 87 S. Ct. 408, 17 L.Ed.2d 374 (1966); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), he contends nevertheless that it violated Section 605 of the Communications Act, 47 U.S.C. § 605 (1970) and Sections 2510 et seq. of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. These statutes, however, expressly *permit* the interception by law enforcement officials of communications "where such [official] is a party to the communication or one of the parties to the communication has given prior consent to such interception . . .," and expressly sanctions the admission of evidence so gathered. 18 U.S.C. §§ 2511(2) (c) and 2517(3). *See also* United States v. White, *supra,* at 791, 91 S.Ct. 1122 (Harlan, J., dissenting).[3]

■ Appellant next claims error in the trial judge's denial of his pre-trial motion for the production of notes relating to the alleged bribery solicitations taken by Carrico during the months preceding appellant's arrest. If this evidence falls within the terms of Subsection 3500(a) of the Jencks Act, 18 U.S.C. § 3500(a) (1970), it is produceable only at trial after the witness has testified, unless, of course, it was favorable to the accused, in which case the prosecution may be obliged to produce immediately. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Subsection 3500(a) provided, at the time the judge denied the motion, that

. . . no statement . . . made by a Government witness . . . *to an agent of the Government* shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.[4]

3. Even if we accept appellant's rather strained construction of these statutes, it would be sufficient to note that the arrest itself was supported by probable cause independent of the use of the device, that the damaging admissions made by appellant

after his arrest were unrelated to its use, and that no evidence obtained from the use of the device was ever introduced at trial.

4. On October 15, 1970, sixteen days after the denial of the motion, the subsection

Although these notes appear to have constituted "statements" within the meaning of Subsection 3500(e) (1) of the Act,[5] and were thus subject to mandatory discovery at trial after the witness had testified, 18 U.S.C. § 3500(b), we agree with appellant that the Act did not bar their discovery before trial, since they were not "made to an agent of the Government."

 If evidence does not fall within the terms of Subsection 3500(a) of the Act, then Rule 16(b) of the Federal Rules of Criminal Procedure provides that the trial judge may, in his discretion, order its pretrial production if it is material to the case and the request is not unreasonable. In opposing production, the prosecutor advanced only his opinion that the notes were Jencks Act statements and that they were not favorable to the appellant within the meaning of *Brady, supra.* After examining the notes *in camera*, the judge denied appellant's motion without opinion. Therefore we also agree with appellant that the denial for no apparent reason of a reasonable request for documents of obvious materiality to the case cannot be excused as an exercise of the trial judge's discretion under the Rule. *See* United States v. Bryant, 142 U.S.App. D.C. 132, 439 F.2d 642 (1971) and authorities cited therein. In this case, however, appellant made no request to inspect these notes at the trial after Carrico had testified, as was clearly his right under the Jencks Act and as the Government conceded in its opposition to pretrial production. If appellant had desired to show any variance between

Carrico's detailed testimony relating to the critical events and his written records of those same events, he had ample opportunity to do so. Under these circumstances, the question becomes whether the error was sufficiently prejudicial to call for the reversal of appellant's conviction. Following the admonition of the Supreme Court to "substitute judgment for automatic application of rules," we conclude that it was not. Kotteakos v. United States, 328 U.S. 750, 760, 66 S.Ct. 1239, 1245, 90 L.Ed. 1557 (1946).

 Appellant finally attacks the restrictions put on the testimony of his character witnesses and on his attempt to show racial prejudice on the part of Carrico, the chief government witness. Character witnesses may testify only to the defendant's *reputation* for a character trait inconsistent with the commission of the alleged offense. They may not testify to their own opinions or to specific acts, and the trial judge properly denied appellant's attempt to ask each witness whether appellant had ever solicited bribes from him. *See* 2 Wright, Federal Practice and Procedure, § 409 at 117 (1969) and cases cited therein. The question of Carrico's racial prejudice was at best only remotely related to the central issue of appellant's guilt or innocence of the crimes charged, and the judge was well within his discretion in prohibiting testimony and cross examination on the question. *See* Blair v. United States, 130 U.S.App.D.C. 322, 325, 401 F.2d 387, 390 (1968). The trial judge permitted inquiry whether the promotion over Carrico's head of a

was amended to delete the italicized phrase. Pub.L. 91–452, title I, § 102, 84 Stat. 926.

5. Subsection 3500(e) (1) applies the Act to "written statement(s) made by (the) witness and signed or otherwise adopted or approved by him," and has been construed to include notes and memoranda prepared by witness to refresh their recollection of the specifics of an offense. Spurrier v. United States, 389 F.2d 367 (5th Cir. 1967), cert. denied, 391 U.S. 922, 88

S.Ct. 1814, 20 L.Ed.2d 658 (1968); Bradford v. United States, 271 F.2d 58 (9th Cir. 1959). A statement need not be signed by a witness to fall within this section, Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963), and the fact that it was written by the witness himself is sufficient to show adoption or approval. *See* United States v. Hilbrich, 232 F.Supp. 111 (D. Ill.1964), aff'd 341 F.2d 555, cert. denied, 381 U.S. 941, 85 S.Ct. 1775, 14 L.Ed. 2d 704 (1965).

less qualified man created a grudge-type bias in the witness, but did not permit further inquiry, based on the fact that this man was a Negro, into Carrico's racial prejudice. We see no prejudicial error.

Affirmed.