**UNITED STATES of America,**

v.

**Maurice H. ROSENBLOOM, Appellant.**

**No. 73–2231.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 19, 1974.

Decided Dec. 5, 1974.

Rehearing En Banc Denied April
1, 1975.

Jacob Sheeskin, Rockville, Md., with whom Harry M. Stern was on the brief, for appellant.

James N. Owens, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Jason D. Kogan, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, LEVENTHAL, Circuit Judge, and DAVIS,* Judge, United States Court of Claims.

PER CURIAM:

The claim of speedy trial denied has been given careful consideration, especially in view of the long time involved. But the case calls for a balancing of factors as appears from Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We are of the view that no significant delay was attributable to negligence or fault on the part of the prosecution, that most of the delay was attributable to the Government's successful interlocutory appeal of a motion to suppress evidence; that there was neither detention nor release on bail, but rather on recognizance; that the defendant's irrational actions contributed materially to the delay in setting of a trial date; that there was no prejudice to the conduct of the defense; and that after the motion to suppress was resolved by an authoritative ruling of this court, there was a further delay of only 4–5 months prior to the date set by the judge, with the consent of counsel, for the trial. We do not believe that the possible stress on appellant attributable to the pendency of the charges involved in this case weighs heavily enough to swing the balance of factors toward a

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

dismissal of the indictment for denial of speedy trial.

Affirmed.**

FAHY, Senior Circuit Judge (dissenting):

The appeal is from convictions of two counts of assault with a dangerous weapon (22 D.C.Code § 502), one count of assault on a police officer with a dangerous weapon (22 D.C.Code § 505) and one count of assault on a federal officer (18 U.S.C. § 111). All the charges grew out of one incident, the resistance by appellant to the service upon him by a United States deputy marshal of an order of the Superior Court of the District of Columbia. The order directed appellant to restore a tenant to possession of an apartment in a building owned by appellant, and also enjoined him from evicting the tenant. Eviction had already been accomplished by appellant, however, several hours before the deputy marshal arrived.

I need not go into the full details of appellant's resistance but note now that his testimony concerning the incident and his bizarre behavior on several occasions prior to trial raise serious questions about his emotional stability, a factor the importance of which shall be developed.

Notwithstanding the convictions have substantial factual support I would order dismissal of the indictments on the ground that appellant was denied his right to a speedy trial.[1]

** The foregoing was originally prepared as a memorandum in support of a judgment, to be sent to the parties and kept in the public files but without publication of printed copies by the court. See Rule 8(b) of the General Rules of the United States Court of Appeals for the District of Columbia Circuit; cf. C. Joiner, Limiting Publication of Judicial Opinions, 56 Judicature 195 (1972). The division has agreed to publication in view of the preparation and publication of the dissent. The foregoing has not been recast into the format of a conventional opinion, since this is a field in which each case stands on its facts.

1. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S.Const. amend. VI.

I

Thirty-five months elapsed between arrest, on August 24, 1970, and trial, on July 23, 1973.[2] The trial, accordingly, was not speedy within the ordinary meaning of the language of the Constitution, and that meaning I think must be controlling absent reasons which the law can accept as justifying a different result. The District Court's own Rules contain the following pertinent provisions:

All indictments returned shall be tried within 180 days from return of indictment if the defendant is on bond . . . . . The United States or the defendant may, for good cause shown, petition the judge to whom the case is assigned to extend the time period applicable to the particular case. In exceptional cases the court may, sua sponte, order an extension. (Rule 2–7(d)(1).)

None of these provisions was complied with. The indictment was returned October 9, 1970, and, as stated, the trial did not occur for nearly three years. The contrast between this Rule, which, even if dormant, at least sets a goal to be sought, and the course of this case, is striking.

In Barker v. Wingo, 407 U.S. 514, 530–532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court outlined the approach on a case by case basis for determining whether delay violates the constitutional right.[3] The Court held that the

2. Appellant was released on personal recognizance the day after his arrest. Significant to the examination hereinafter made of prejudice suffered by appellant, one of the conditions set out by the court in its release order dated August 25, 1970, was that he

undergo psychiatric treatment at VA Hospital and submit proof of such arrangements to the Bail Agency.

3. In Barker v. Wingo the Court found that a delay of more than five years between arrest and trial for a brutal murder did not violate the Constitution. Two reasons were dominant. One was lack of significant prejudice to the accused; the other the Court's conclusion that the accused did not want a speedy

most important factors to be balanced are (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. These factors were to be considered upon the background of certain over-all principles applicable to the speedy trial problem. Thus,

> A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who . should protect that interest . . .. [T]he rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. (Footnotes omitted.)

*Id.* at 527 and 529, 92 S.Ct. at 2191.

The responsibility of the Government for expediting trials of accused was emphasized by this court[4] in Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684, 687–688 (1966):

> . . . [T]he longer the time between arrest and trial, the heavier the burden of the Government in arguing that the right to a speedy trial has not been abridged.

\* \* \* \* \* \*

The passing of . . . . a considerable length of time, no matter who is

trial, a compelling reason in the special circumstances relied upon by the Court.

**4.** A number of recent decisions by this court have dealt in a critical fashion with delays prior to trial. *See,* United States v. West, 504 F.2d 253 (D.C.Cir., 1974); United States v. Calloway, 505 F.2d 311 (1974); United States v. Dunn, 148 U.S.App.D.C. 91, 459 F.2d 1115 (1972); United States v. Holt, 145 U.S.App. D.C. 185, 448 F.2d 1108 (1971); and Smith v. United States, 135 U.S.App.D.C. 284, 418 F.2d 1120 (1969).

**5.** At the hearing appellant acknowledged to Judge Corcoran that he had been under a doctor's care and added,

"at fault," should act as a spur to the Government to seek prompt trial.

## II

Upon this background, and having in mind the four important factors pointed to in Barker v. Wingo, *supra,* later to be related more particularly to the facts of this case, I review the course of the proceedings following the arrest on August 24, 1970.

On November 6, 1970, appellant moved to suppress evidence. The motion was not acted upon until thirteen months later, December 1, 1971, when it was granted. This led to an interlocutory appeal by the United States, since the evidence was deemed essential to the prosecution. I shall return to the course of the interlocutory appeal. During the thirteen months while the motion to suppress was pending, at the court's suggestion based on appellant's behavior at a status hearing November 9, 1970,[5] he was committed to St. Elizabeths Hospital for 60 days' observation of his mental condition.[6]

He was adjudged competent to stand trial on January 22, 1971, and trial was set for March 31, 1971. The Government then moved again for another mental examination, but this motion was abandoned on the 22nd of March, 1971, because of opposition by defense counsel, and trial was reset for June 24, 1971. The case then appears to have been neglected by the prosecution and the court

> . . . I cannot afford to keep returning to this Court because the attorneys are very expensive and if I'm going to have a trial, I would either like to be tried, if something like that is necessary, for what I supposedly did. I don't know what that is. Or else, to dismiss the case because it appears to me that the attorneys are just feeding upon the crime which is being perpetuated and, apparently, with the aid of the so-called Court.

Following this colloquy Judge Corcoran stated that he would entertain a motion for a mental examination of appellant.

**6.** He was transferred, however, to a Veterans Administration institution where he had previously received psychiatric outpatient care.

until October 21, 1971.[7] Appellant was prepared for and requested trial that day. The trial date, however, was again postponed to December 1, 1971. On October 27, 1971, the court sua sponte ordered another mental examination, resulting in the doctor's report of November 15, 1971, that appellant was able to assist counsel in his defense.

On November 18, 1971, appellant moved for dismissal for lack of a speedy trial. This was fifteen months after arrest. The motion was denied April 17, 1972, five months after filing.

I return now to the granting, on December 1, 1971, of appellant's motion to suppress evidence, which led to an interlocutory appeal by the Government. The notice of appeal was marked filed on the 31st day after the date of the suppression order. If that date of filing was correct it was too late. Appellant moved in the District Court for dismissal of the appeal. Upon denial of the motion he moved for dismissal in this court. The problem was finally disposed of by this court June 26, 1972, when we held the notice had been filed within 30 days instead of 31 days, though marked filed on the 31st day. Our decision relied, *inter alia,* upon an affidavit filed by the Government to the effect the notice was actually lodged with the clerk on the 30th day. Five and a half months were thus consumed because of the delay in filing and the error in marking the filing date.

The merits of the suppression order were ready to be brought on for decision by this court June 26, 1972. A total of about 64 days extensions of time, of which the Government was responsible for more than half, were allowed for briefing, which was completed October 5, 1972.[8] Yet this · interlocutory appeal, during the pendency of which a trial waited, was not reached for argument in this court until March 13, 1973, 16 months after the appeal was noted and 31 months, lacking 11 days, after appellant's arrest.

I interrupt the course of the proceedings now to point out that this court has since taken steps to avoid such delay. On January 25, 1974, the court ordered that such interlocutory appeals shall be expedited. The order includes a provision that,

> The Clerk shall schedule the case for argument promptly after the briefs are filed.[9]

On March 28, 1973, fifteen months after the District Court's suppression order, and 31 months after appellant's arrest, this court reversed the suppression order, and on April 13, 1973, returned the record to the District Court, the mandate following April 25. Several months were consumed by what may be considered reasonable institutional requirements, and the case was tried July 23, 1973, thirty-five months after arrest.

On May 30, 1973, when the July 23rd date was agreed upon, counsel for the accused, in response to the court's inquiry as to how long the case had been around, stated, "A long time, Your Honor—and I think the main point that Your Honor hasn't ruled on is the motion to dismiss on the ground that Mr. Rosenbloom hasn't had a speedy trial." The trial went forward, however, and was over in less than 24 hours of actual trial time.[10]

### III

I turn now to consideration of the above course of proceedings under the

---

7. Nothing appears of record during this period except the filing by appellant on June 16 of a notice of intention to rely on a defense of insanity, subsequently withdrawn.

8. Printing was not then completed but I do not understand that any of the subsequent delay in calendaring the case was due to that circumstance.

9. Amendment to Rule 7 of the General Rules of the U. S. Court of Appeals for the District of Columbia Circuit ((c)(1)(iiii)).

10. It began at one minute to 2 p. m. on the 23rd and ended at 2:34 p. m. the next day, with several short recesses during the 24-hour period.

four important factors to be balanced under Barker v. Wingo, *supra.*

The length of the delay, the first of these important factors, is inordinate considered alone.[11] As to the second factor, appellant asserted his constitutional right four times. The first time was his own statement at the status hearing, November 9, 1970, see footnote 5, *supra,* that if he was going to be tried, "I would . . . like to be tried . .." This statement in its context clearly indicated he would like to be tried quickly. The second time was October 21, 1971, at a hearing to reset the trial date, fourteen months after arrest. Appellant's counsel objected to failure to obtain a trial "today", complaining urgently of the delay and consequent prejudice of further delay because of difficulty in later obtaining the presence of an important eyewitness then available. The third time was the filing of his motion to dismiss November 18, 1971, fifteen months after arrest. During seven months of this period, as we have seen, from March 22, 1971, until October 21, 1971, the case apparently was neglected.[12] He relied for the fourth time upon his constitutional right when the case was finally nearing trial in the spring and summer of 1973.

I defer further comment upon the reasons for the delay, the third factor, pending consideration of the fourth factor, the question of prejudice to the defendant.

Appellant's emotional condition was recognized by the prosecution and the District Court, as well as by his own counsel. It has a special relation to the prejudice he undoubtedly suffered during the three-year period before trial. The harm suffered by an accused because of extensive pretrial delays has been noted by the Supreme Court in several recent cases. In United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), the Court stated that "major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense":

> Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*Id.* This thought is repeated in Barker v. Wingo, *supra,* by Mr. Justice Powell, who stressed that,

> . . . even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

407 U.S. at 533, 92 S.Ct. at 2193.[13] In Rosenbloom's case, I think the prejudice he experienced is expressed well in his written motion to dismiss, filed fifteen months after his arrest:

> . . . the Defendant who has a history of emotional problems suffered from great anxiety, several days before October 15, 1971 and upon hearing of a postponement of the trial suffered from extreme emotional distress and depression.

> The anxiety and public accusation which the Defendant has undergone has created a situation where the Defendant's ability to defend himself has been permanently impaired. As a result of the extended time between the Defendant's arrest and his projected trial date, the Defendant has been denied his constitutional rights as provid-

---

11. This court in the 1966 *Hedgepeth* case (*supra,* 364 F.2d at 686) found that a delay of more than one year raises a speedy trial claim of prima facie merit.

12. See footnote 7, *supra.*

13. As stated in an earlier case, United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776,

15 L.Ed.2d 627 (1966), one of the recognized safeguards of the constitutional provision is "to minimize anxiety and concern accompanying public accusation." *See also,* Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), and Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

ed in the 6th Amendment of the United States Constitution.[14]

This prejudice was aggravated by the twenty months' additional delay which followed. Whatever the reasons for it, the inordinate length cannot be ignored in appraising its effect upon appellant and his family:

.   .   . these provisions [speedy trial provisions and Rule 48(b) F.R.Crim.P.] seek to minimize the anxiety and attendant evils which are invariably visited upon one under public accusation but not tried  .   .   ..

Hanrahan v. United States, 121 U.S.App. D.C. 134, 348 F.2d 363, 367 (1965). This is particularly true in the case of an unstable personality such as we have in this case. As the delay increased so we must in reason assume the prejudice increased; and of course the period of this personal prejudice must include the time consumed by the interlocutory appeal. *Cf.,* Hedgepeth v. United States, *supra,* 364 F.2d at 688. The effect of the delay upon this appellant, whose mental condition seriously troubled both court and prosecution, is incalculable.

The reasons for the delay, the remaining important factor to be considered, appear from the description of the course of the proceedings which have been set forth. I can find only minor delay, such as the 30 days' extension of time to file his brief in the fall of 1972, on the interlocutory appeal of the Government from the suppression order of December 1, 1971, to be completely attributable to appellant, unless one is to consider the time consumed by mental examinations. The entire remainder I think is attributable either to the prosecution or to the operation of the system which has the responsibility of meeting its constitutional obligations to society and the accused person. The excessive time consumed in the operation of the system is noted in several stages of the proceedings. Thus, appellant's motion to

suppress evidence, filed November 6, 1970, was not acted upon until December 1, 1971, thirteen months later. There was also the "blackout", as it were, of seven months after March 22, 1971, when the court set June 24 for the trial, which passed without further notice until it was called on October 21 and reset for trial December 1, 1971, when the motion to suppress was granted, leading to the pretrial appeal to this court. No reason at all appears for the eight months' gap between March 22, 1971, and December 1, 1971. And the long delay in disposition of the interlocutory appeal was in substantial degree due to the fact that the notice of appeal, though later held to have been filed on the last available day, was erroneously marked as filed one day too late, which led to the litigation over whether this court obtained jurisdiction. This phase of the appeal from the suppression order consumed five months.

## IV

In ·connection with the interlocutory appeal I do not fail to note United States v. Bishton, 150 U.S.App.D.C. 51, 463 F.2d 887 (1972). After arrest in that case some twenty months elapsed before trial. Eight months had been consumed by an appeal of the Government to the District of Columbia Court of Appeals from dismissal by the then Court of General Sessions of an information grounded upon an inapplicable statute. In new proceedings, which later reached this court, Bishton contended he had been denied a speedy trial. We said:

Courts, of course, are not excluded from the obligation to give defendants a speedy trial. But the function of appellate courts necessarily casts the delay attendant upon their deliberations · in a somewhat different light, and the time spent on appeals is not generally included for purposes of calculating the period of delay in prosecution. The right of the Government

---

14. As previously noted, footnote 5, *supra,* appellant in November, 1970, had verbally expressed his anxiety over the charges and his desire that he either be tried or that the case be dismissed. Moreover, at the hearing October 21, 1971, as has also previously been noted, he requested to be tried that day.

to appeal decisions in the defendant's favor before jeopardy attaches is designed to protect the interest of society in lawfully prosecuting criminal offenders, and, while such an appeal is not at the defendant's instance, the fact that his is legally, albeit conditionally, a free man minimizes the oppressiveness of the attendant delay. (Footnote omitted.)

*Id.* at 890.

The *Bishton* case I think must now be considered with our subsequent affirmance of United States v. Perry, 353 F.Supp. 1235 (D.C.D.C.1973). A considerable part of the delay in *Perry* was due, as in our case, to an interlocutory appeal. This court had affirmed, and remanded the case to the District Court, nearly three years after the arrest. On the remand Judge Hart (now Chief Judge of the District Court) pointed out that the case was in our court subject to opinion (not counting the delays permitted to the Government) for 7½ months, and that the over-all time in the Court of Appeals was 20 months. He observed:

> It is not for this Court to say whether this length of time is necessary for a decision on a Motion to Suppress in the Court of Appeals. The United States Attorney, as such, is not responsible, but the Government is.
>
> It is likewise true that unnecessary delays in the Trial Court, while not the responsibility of the United States Attorney, as such, are the responsibility of the Government.
>
> In this case there was no deliberate attempt by the Government to delay trial in order to hamper the defense. The Government's delay can fairly be attributable to the shortage in the

United States Attorney's Office of experienced personnel, both in the Grand Jury and in the Appellate Sections.

> Any delay in the Trial and Appellate Courts is fairly attributable to an overcrowded calendar.

But in Barker v. Wingo, *supra,* the Supreme Court said that in weighing delay in trial, overcrowded Courts should be weighed less heavily (than Government's deliberate attempt to delay) "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." The same reasoning applies to a shortage of personnel in the United States Attorney's Office. *Id.* at 1238–1239.

As to some of the defendants who had been incarcerated for various periods of time, the judge noted:

> These defendants, when not incarcerated, have still been disadvantaged by restraints on their liberty and by living under a cloud of anxiety, suspicion and hostility.

*Id.* at 1240. Judge Hart dismissed the indictment for lack of a speedy trial. We affirmed his decision by order. This post-Barker v. Wingo (June 22, 1972) action of our court [15] is significant as to the treatment of delay due to a pretrial interlocutory appeal, and leads me to conclude that *Bishton* is not to be accorded the weight it otherwise would have for excluding consideration of time consumed by an interlocutory appeal.[16] I think not only is the delay of the interlocutory appeal in Rosenbloom's case to be given weight in and of itself, but there is no possible way of avoiding its effect on the personal factor of prejudice.

---

**15.** *Bishton* was decided in April, 1972.

**16.** Indeed, *Bishton* itself qualified its position by stating "the time spent on appeals is not generally included for purposes of calculating the period of delay in prosecution," 463 F.2d at 890. We referred in a footnote to the American Bar Association Project on Minimum Standards of Criminal Justice, Standards Relating to Speedy Trial, which would

exclude interlocutory appeals from computation of the time for trial. If by this it is meant that such time should be excluded in considering the issue of a speedy trial, it is I think a rigid position which cannot be reconciled with Barker v. Wingo or our affirmance of *Perry.* On that issue the delay to be considered cannot be limited to that which occurs in the District Court.

## V

All factors considered I conclude the inordinate delay cannot be reconciled with the constitutional provision. It is worth noting that the judge who presided at the trial seemed to be troubled by the situation confronting him at sentencing. Notwithstanding the seriousness of the crimes of which appellant was convicted, the sentence imposed was only a fine of $1,000.00 and probation for two years, due no doubt to the court's concern as to appellant's responsibility, coupled with the suffering he had endured since his arrest. I would take the further step of deciding that the indictment should now be dismissed, to bring the situation into conformity with the opening lines of the Sixth Amendment.

I respectfully dissent from the court's affirmance of the convictions.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

## ORDER

PER CURIAM.

It appearing that appellant's suggestion for rehearing en banc having been transmitted to the full Court and there not being a majority of the Judges in regular active service in favor of having this case reheard en banc, it is

Ordered by the Court en banc that the aforesaid suggestion for rehearing en banc is denied.

Statement of Chief Judge BAZELON as to why he voted to grant Rehearing En Banc:

The issue of a speedy trial in criminal cases, if a substantial factual situation is presented as here, raises a constitutional question. The Constitution grants an accused the right to enjoy a speedy trial. It is an elusive problem, to be decided in the circumstances of each case, but is no less important for that reason. Here we face a delay of almost three years and a defendant who consistently asserted his right to a speedy trial. The case thus presents a presumptive violation of a constitutional right; any disposition of the case requires a searching inquiry into the facts.

The Per Curiam opinion of the majority in this case does not, except subjectively,[1] even purport to analyze the facts of the case or to balance the four factors to be considered under Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Those factors are carefully and explicitly balanced in Judge Fahy's dissenting opinion.

As I understand, the court does not feel that it must sit as a sort of appellate court to review the correctness of decisions of a division of the court. It must choose when to hear or rehear a case en banc, dependent largely upon the importance of the case. But what is important? If my memory serves me correctly, our Brother Fahy has requested only once before in our twenty-five years on the court that the court vote on counsel's suggestion for a rehearing of a case en banc. This is rare proof of the case's importance in my view.

I understand that the reason for Judge Fahy's request is not only that the speedy trial problem is by all accounts mounting in public recognition of its importance (and of that fact, there can be no dispute);[2] but is also that he believed the fate of this particular human being, Maurice Rosenbloom—of recognized im-

1. The Court blames Rosenbloom's "irrational behavior" for part of the delay but does not explain how that behavior caused a delay. Apparently, Rosenbloom's behavior was deemed cause for a competency examination (two of them in fact) and the examination caused delay. But that delay was only a small part of the three years (actually less than three months). The remainder of the delay was crowded dockets and the govern-ment's interlocutory appeal. The Court's opinion is thus subjective to the point of obfuscation.

2. Congress has recently passed Senator Ervin's speedy trial legislation. Pub.L. 93–619, 88 Stat. 2076. This is indicative of public concern about delay in the system of criminal justice.

paired mental condition—was important and deserving of more attention than it has to date received by our court which is charged with protecting his constitutional rights. As shown by Judge Fahy's dissent, there was a very substantial question whether Mr. Rosenbloom had been denied the constitutional right to a speedy trial and whether his misfortune had been seriously aggravated by its denial. Judge Fahy thought that serious constitutional question important enough to enlist greater interest at this level in the judicial system. Finding his reasoning and concern compelling, I concur in his judgment.

I have noted that Mr. Rosenbloom received only a fine and did not suffer a term in prison. Perhaps this fact weighed in the panel majority's ruling, the implicit premise being that we need not spend more time on the case in light of this sentence. However, even if this premise were legitimate, and I certainly do not think it is, the panel's casual opinion is a precedent for other cases. I think it should be reconsidered before it has attained precedential status, as well as because of its apparent infringement of Mr. Rosenbloom's own constitutional right.

Statement of Senior Circuit Judge FAHY regarding the suggestion of counsel for appellant that the Court should rehear the case *En Banc*:

Though as a senior judge I have no vote that a case should be reheard en banc, I have the right to request the judges in active service to vote on a suggestion made by a party that the case should be reheard in that manner. Deeming an important constitutional question to be presented and not adequately disposed of, I made such a request in this case, which indicates my belief that the case should be reheard en banc.

Judge MacKinnon's reference to Rule 8(b) of this court leads me to revise the position taken in my dissenting opinion as to the relationship between the order of this court affirming the decision of the District Court in *Perry* and the earlier decision of this court in *Bishton*.

Whether or not Rule 8(b) applies to the situation seems immaterial, for in any event it is true that this court's order in *Perry* is not to be construed as an abandonment or reversal of the principle laid down in *Bishton*. This is so because the *Perry* order is silent as to the reasons for it. There accordingly arises no presumption that our court agreed with the reasons Judge Hart gave in his *Perry* opinion for deciding to dismiss the indictment for lack of a speedy trial.

However, Judge Hart's consideration in *Perry* of the period before trial which was consumed by the interlocutory appeal was grounded upon the Supreme Court's decision in Barker v. Wingo, which had been rendered subsequently to *Bishton,* and I agree with Judge Hart's position to the extent at least that the time consumed by such an interlocutory appeal need not be disregarded entirely or in all circumstances. The *Bishton* opinion is not so rigid in the matter as to preclude my position in that regard in this case.

Statement of Circuit Judge MacKINNON as to why he voted to deny rehearing *en banc*:

Judge Bazelon's assertion that our decision to grant en banc consideration is "dependent largely upon the importance of the case" overlooks the need to maintain uniformity of decision. Under the applicable Federal Rules, this is an equal standard to be considered in deciding whether to *en banc* a case. See Fed.R. App.P., Rule 35. Since Judge Bazelon's statement thus misstates the reason my vote was cast against *en banc* consideration, I set forth my reasons.

In my view, the Per Curiam opinion of the majority not only is consistent with prior decisions of this court but, more importantly, is consistent with principles enunciated by the Supreme Court. The majority opinion properly applied the standards established for cases of this sort by Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), where

the Court found that a delay between arrest and trial of more than five years did not violate the right to a speedy trial. In the instant case, appellant was released on his own personal recognizance during the entire period, his own personal actions contributed materially to extending the trial date, and the delay did not prejudice his defense. By contrast, I believe the dissent incorrectly evaluates the "time consumed by mental examination" (At 782), the time expended in determining the correct filing date (*id.*), and especially the time necessarily expended in litigating the interlocutory appeal—in which the Government succeeded in reversing the suppression order of the trial court (*id.* at 782–783). In United States v. Bishton, 150 U.S.App.D.C. 51, 463 F.2d 887 (1972), we evaluated the weight to be accorded delays in trial due to interlocutory appeals. The instant opinion is consistent with that decision, and there is no logic in holding the Government responsible for the appellate time needed to overturn an erroneous decision by a trial court. *Cf.* ABA Standards, Speedy Trial § 2.3(a) (1968):

> The following periods should be excluded in computing the time for trial:
>
> (a) The period of delay resulting from other proceedings concerning the defendant including but not limited to an examination and hearing on competency and the period during which he is incompetent to stand trial, hearings on pretrial motions, *interlocutory appeals,* and trial of other charges. (Emphasis added.)

Our subsequent summary affirmance of United States v. Perry, 353 F.Supp. 1235 (D.D.C.1973) by order and without opinion does not under our rules constitute an abandonment or reversal of the principles laid down in *Bishton.*

> Unpublished orders including explanatory memoranda of this Court are not to be cited in briefs or memoranda of counsel as precedents. However, counsel may refer to such orders, and memoranda, for such purposes as ap-

plication of doctrines of res judicata, collateral estoppel and law of the case, which turn on the binding effect of the judgment, and not on its quality as precedent.

U.S.Ct. of App., D.C.Cir., Rule 8(b), as amended July 31, 1973.

Because I view the majority opinion as consistent with our existing authoritative decisions and with the standards set down by the Supreme Court, I voted against *en banc* consideration of this case.