Bernard A. BOWMAN, Appellant,

v.

UNITED STATES, Appellee.

No. 10425.

District of Columbia Court of Appeals.

Argued Nov. 10, 1976.

Decided April 5, 1978.

Richard H. Saltsman, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry, William D. Pease, Michael G. Scheininger, and Joseph B. Valder, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before HARRIS and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

HARRIS, Associate Judge:

Appellant challenges his conviction for robbery (D.C.Code 1973, § 22–2901) on the sole ground that the passage of nearly 13 months between his arrest and his trial denied him his Sixth Amendment right to a speedy trial. We affirm the trial court's denial of appellant's motions to dismiss the indictment.

On September 29, 1974, appellant was arrested and charged with a September 16, 1974, armed robbery. At the time of his arrest, and throughout the subsequent litigation of the case, appellant was incarcerated, having been committed shortly after the robbery under the Youth Corrections Act for an unrelated prior offense. *See* 18 U.S.C. § 5010(b) (1970). A grand jury returned an indictment against appellant on November 27, 1974; he was arraigned two weeks later. Appellant requested a jury trial, which was scheduled for February 24, 1975. The case was not tried on that date, as the prosecutor was granted a continuance because he then was engaged in the trial of another case. A new trial date was set for March 20, 1975.

Three days before the second scheduled trial date, defense counsel was granted a continuance because he had another trial set for that date. The trial then was rescheduled for April 21, 1975. In the interim, on March 26, 1975, appellant filed a pro se motion to dismiss the indictment for lack of a speedy trial.

On April 21, appellant's case could not be reached; both the judge and defense counsel were engaged in the trial of another matter. With appellant's consent, the trial was rescheduled for June 3, 1975. On May 13, 1975, appellant filed a second pro se

Constance O'Bryant, Public Defender Service, Washington, D.C., for appellant. Frederick H. Weisberg, Public Defender Service, Washington, D.C., also entered an appearance for appellant.

motion seeking dismissal of the indictment for lack of a speedy trial. The court reserved its consideration of both motions until the hearing on all motions, which later was to be conducted immediately prior to the trial.

On June 3, by consent of both counsel the case was continued to August 12, 1975.[1] No reason for the continuance was noted. A status hearing subsequently was held to set yet another trial date, as the judge meanwhile had determined that he would not be sitting on August 12. The trial finally was scheduled for October 21, 1975, over appellant's objection and his request for an earlier trial date. The court explained the new date by stating:

> [Before October 21, 1975] I have 4 cases per day, and 80% [of the accused in those cases] are incarcerated [pending trial].

On October 21, six trial dates and nearly 13 months after appellant's arrest, his motions were heard and the trial commenced. The jury found appellant guilty.[2]

 While the right to a speedy trial is a fundamental right guaranteed by the Sixth and Fourteenth Amendments, *Klopfer v. North Carolina*, 386 U.S. 213, 222–23,

87 S.Ct. 988, 18 L.Ed.2d 1 (1967), a showing of more than mere delay is necessary to support a finding of constitutional violation. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (hereinafter *Barker*). We apply the flexible balancing approach enunciated in *Barker* and analyze (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Barker, supra,* at 530, 92 S.Ct. 2182. *Accord, United States v. Calhoun,* D.C.App., 363 A.2d 277 (1976); *Moore v. United States,* D.C.App., 359 A.2d 299 (1976); *see Coleman v. United States,* D.C. App., 332 A.2d 355 (1975); *United States v. Mack,* D.C.App., 298 A.2d 509 (1972). We note, however, that no single factor is necessary (or sufficient) for a determination of a speedy trial claim. Thus, while the lapse of more than a year between arrest and trial gives prima facie merit to a claim that the first prong of the *Barker* test has been established favorably to an appellant, *see Branch v. United States,* D.C.App., 372 A.2d 998 (1977), the length of the delay still must be evaluated in light of the other three factors.[3] *Barker, supra,* 407 U.S. at 533, 92 S.Ct. 2182.

1. Appellant contends that he did not consent to the granting of this continuance, but agreed only to the new trial date. We find no support in the record for that assertion.

2. The government presented its case primarily through the testimony of the robbery victim. Appellant presented an alibi defense which failed rather dismally. He testified that he was visiting the home of his girlfriend from 11:00 a.m. until late in the evening of September 16, 1974. His testimony was corroborated by the testimony of his girlfriend, her sister, and the sister's child, all of whom were at home at some time during the day of the robbery.

Appellant's girlfriend and her niece also testified that between the hours of 8:00 and 9:30 p.m. (when the robbery occurred) they, with appellant, were watching "The Rookies" and "S.W.A.T." on television. Appellant's mother testified that appellant was not at home during the afternoon or evening of September 16, 1974, but that she herself had been at home watching "The Rookies" and "S.W.A.T." that evening. In rebuttal, the government called the program manager of the television station which carries those shows. He testified that "The Rookies" and "S.W.A.T." in fact were not telecast on September 16, 1974. He stated that

"The Rookies" was preempted that night by a presidential news conference and commentary between 8:00 and 9:30 p.m. Thereafter the Oakland Raiders-Buffalo Bills football game was telecast until around midnight. Moreover, the program "S.W.A.T." was not shown at all in this area until February 1975.

3. In *Barker, supra,* a delay of over five years was held by the Supreme Court not to have violated that defendant's constitutional rights. We note an abundance of speedy trial contentions in recent cases in this court, and that upward trend undoubtedly will continue due to the overwhelming volume of criminal cases in the Superior Court. Illustratively, in 1977, 3,417 defendants were charged by indictments or informations with felony violations in that court, 12,872 defendants were charged with serious misdemeanors (*i. e.,* those prosecuted by the United States Attorney), and 5,296 delinquency petitions were filed against juvenile respondents in the Family Division. With that sort of a caseload, the passage of more than 365 days from arrest to trial (a period which certainly has no talismanic constitutional significance) may become the rule rather than the exception.

■ This is not to denigrate the importance of the guarantee of the regrettably elusive "speedy trial." Appellant's case presented no complex issues; the offense was a street crime with respect to which the government called one witness, the victim, in addition to three investigating police officers. Appellant presented an uncomplicated (albeit ill-fated) alibi defense, and the trial consumed slightly over two days. Thus, as no adequate reason for the 13-month delay is inherent in the nature of the proceeding or the evidence, we will assume that the time lapse was "presumptively prejudicial." This triggers our inquiry "into the other factors that go into the balance." *Barker, supra,* at 530, 92 S.Ct. at 2192.

■ Six continuances were granted. Two were attributable to the trial court's congested calendar and one to the unavailability of the prosecutor for trial; three others were either requested or consented to by defense counsel. While institutional delays (like those inherent in the development of a complex case to its readiness for trial) are basically neutral and are not to be weighed as heavily against the government as would be a deliberate attempt to hinder the defense, they nevertheless are of significance when considered in terms of a possible infringement of a constitutional right. *Strunk v. United States,* 412 U.S. 434, 436, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker, supra,* 407 U.S. at 531, 92 S.Ct. 2182; *United States v. Bolden,* D.C.App., 381 A.2d 624, 627–28 (1977); *United States v. Calhoun, supra,* at 281; *United States v. Jones,* 173 U.S.App.D.C. 280, 295–96, 524 F.2d 834, 849–50 (1975).

■ Appellant, however, shares the responsibility for the delay. Defense counsel either requested or consented to 4½ months of the 13-month period.[4] In addition, during the five months between appellant's

arrest and his first scheduled trial date, the parties were concerned with the normal pretrial steps. While obviously the prosecution, and not the defense, usually is charged with bringing a case to its first scheduled trial date, *see Hedgepeth v. United States, (Hedgepeth I),* 124 U.S.App.D.C. 291, 294–95, 364 F.2d 684, 687–88 (1966), the prosecution cannot be strongly faulted for the inevitable delays which are inherent in the proper and deliberate functioning of the judicial system. *See generally Smith v. United States,* D.C.App., 379 A.2d 1166, 1167 (1977); *Moore v. United States, supra,* at 302. The prosecution is directly responsible for delays of 3½ months, which is one month less than those attributable to appellant. Considering all of the circumstances, we cannot assess the delay dispositively against the government.

■ Appellant did assert his right to a speedy trial several times. He submitted two pro se written motions to dismiss for lack of a speedy trial, and defense counsel made several oral requests for the case to be tried on the earliest possible date. While such assertions normally are entitled to strong evidentiary weight in determining whether a defendant is being deprived of the right, *Barker, supra,* 407 U.S. at 531–32, 92 S.Ct. 2182, it is significant that shortly after each of appellant's pro se motions was filed, defense counsel either requested or consented to an additional continuance. This fact greatly dilutes the significance of appellant's assertions of his right to a speedy trial.[5] *Cf. Jefferson v. United States,* D.C.App., 382 A.2d 1030 at 1032 (1978) (appellant's failure to assert his right to a speedy trial until ten months had elapsed substantially weakened any inference of prejudice).

■ We have been unable to ascertain any prejudice to appellant's defense result-

---

4. As noted, appellant disputes the finding of the trial court and the notation on the trial court jacket that he consented to a two-month continuance on June 3, 1975. *See* note 1, *supra.* Whether that is true or not, we find appellant's contention to be insignificant in the overall context of this case.

5. To conclude to the contrary would present an enigmatic situation, namely, one in which a defendant could make pro se requests for a speedy trial while his lawyer—for tactical reasons—could seek or acquiesce in continuances.

ing from the interval between his arrest and his trial. It does not appear that any witness was rendered unavailable because of the delay, or that the witnesses appellant used were unable to recall events accurately due to the passage of time. Appellant has suggested the general problems of presenting a defense, and alleges only that the memories of his witnesses were "undoubtedly" dimmed. Contrary to such a claim, however, the four alibi witnesses who testified on his behalf purported to be able to recall their activities during the evening of the robbery precisely to the minute. Their memories appeared to be detailed, albeit selective; consistent, albeit wholly discredited. Appellant's defense failed not because his witnesses' memories were dimmed, but because the jury quite understandably found his defense of alibi to be incredible.

In addition, we do not find that appellant suffered any prejudice to his person as a result of the delay. As he already was incarcerated for an unrelated prior offense both at the time of his being charged in this case and during the entire period prior to his trial, any prejudice attributable to his loss of liberty, anxiety, and concern was minimal if not nonexistent. Such prejudice may not be insignificant as a general proposition, however. In *Smith v. Hooey*, 393 U.S. 374, 378–79, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), the Supreme Court recognized that defendants already incarcerated for unrelated crimes, in addition to suffering prejudice to the preparation of their defenses, could be personally prejudiced by an excessive delay of trial in three ways. First, a defendant might be denied the possibility of receiving and serving a sentence at least partially concurrently with his original sentence. Second, the duration of his earlier imprisonment might be increased, and the conditions of his sentence might be worsened. Third, the outstanding charge could cause additional depression and anxiety similar to that of an accused released pending trial. *Accord, United States v. Rucker*, 150 U.S.App.D.C. 314, 316–17, 464 F.2d 823, 825–26 (1972). In the instant case, however, appellant ultimately received a sentence to run consecutively to his prior sentence. Moreover, the conditions of appellant's sentence were not worsened, nor does he seem to have experienced undue additional depression or anxiety pending trial. While in a case such as this the prosecution carries the burden of persuasion, the record indicates that no substantial prejudice to appellant resulted from the delay. *See Hedgepeth v. United States (Hedgepeth II)*, 125 U.S.App.D.C. 19, 22–23, 365 F.2d 952, 955–56 (1966).

While assuredly the nearly 13-month delay between appellant's arrest and trial was undesirable, the consequences thereof did not compel "the draconian remedy of dismissal of the indictment." *United States v. Jones, supra*, 173 U.S.App.D.C. at 298, 524 F.2d at 852. Accordingly, we affirm the trial court's denial of appellant's motions to dismiss the indictment for lack of a speedy trial.

*Affirmed.*

Separate statement by Associate Judge MACK: An analysis of the general principles outlined by this court in *Branch v. United States*, D.C.App., 372 A.2d 998 (1977), leads me to concur in the affirmance of the trial court's order. *See also United States v. Bolden*, D.C.App., 381 A.2d 624 (1977).