Willie STRICKLAND, Jr., Appellant,

v.

UNITED STATES, Appellee.

Nos. 9342, 10014.

District of Columbia Court of Appeals.

Argued Dec. 9, 1976.

Decided July 3, 1978.

Rehearing and Rehearing En Banc
Denied Sept. 29, 1978.

Richard S. Greenlee, Public Defender Service, Washington, D.C., for appellant.

Frederick H. Weisberg, Public Defender Service, Washington, D.C., at time case briefed and argued, also entered an appearance for appellant.

Mary H. Weiss, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, and Daniel J. Bernstein, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, FICKLING * and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellant Strickland here seeks reversal of his convictions on four counts of first-degree murder and one count of possession of a dangerous weapon.[1] Although he raises a number of claims in support of his bid for relief, we find no reversible error and affirm.[2]

On January 16, 1973, the bullet-ridden body of Charles D. Coleman was found in Rock Creek Park just off the 1900 block of Park Road, N.W. Two weeks later, on January 30, members of the fire department discovered the remains of Michael White in a garage at 1474 Clifton Street, N.W. The bodies of two other murder victims, Theodore J. Moore and Yale D. Harris, were discovered, respectively, in a ditch south of The Plains, Virginia, on February 13, and in an alley behind 2003 18th Street, N.W., on February 14, 1973. One Jesse Martin was arrested for murder on May 1, 1973, after police identified his thumbprint on a note found on Moore's body. Confronted with this evidence, Martin made several statements to the police implicating appellant in all four homicides and Hubert Hackney in three of the killings. He admitted, as well, his participation in the final two murders. Appellant was arrested on May 8, and indicted on May 23, 1973, for the four homicides and for carrying a dangerous weapon. He went to trial on February 13, 1974, but at his request a mistrial was declared because of the prejudicial opening statement of counsel for codefendant Hackney.

Thereafter, on June 3, 1974, the Strickland and Hackney trials were severed and appellant's retrial commenced on January 7, 1975. On January 16, the jury found him guilty as charged.

I

Appellant contends that the government's nondisclosure of a homicide squad detective's notes was in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Jencks Act, 18 U.S.C. § 3500 (1970), and thus mandates a new trial or at least a remand for an evidentiary hearing. These arguments were advanced and rejected by the trial court in appellant's motion for a new trial based on newly discovered evidence.

■ At the outset, we note that the decision to grant or deny a motion for new trial based on newly discovered evidence is entrusted to the sound discretion of the trial court, and will not be disturbed on review absent a clear showing of abuse of that discretion. *United States v. Johnson,* 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946); *Quick v. United States,* D.C.App., 316 A.2d 875 (1974); *Heard v. United States,* D.C. App., 245 A.2d 125 (1968); *United States v. Gaither,* 142 U.S.App.D.C. 234, 440 F.2d 262 (1971). See Super.Ct.Cr.R. 33. Although we are satisfied that the trial judge did not abuse his discretion here, we nevertheless address appellant's contention in this regard point by point.

■■ Appellant first posits that the failure of the prosecutor to turn over, pursuant to a request for "all *Brady* material", an impeaching statement made by a government witness necessitates a new trial. While merely impeaching evidence will not normally support a motion for a new trial, *Huggins v. United States,* D.C.App., 333

---

* Associate Judge Fickling was a member of the division at the time the case was argued, but died before entry of this opinion.

1. D.C.Code 1973, §§ 22–2401, and –3204, respectively.

2. In addition to the issues we consider in this opinion, appellant raises two claims of error which we discuss and dispose of in the case of *Hackney v. United States,* D.C.App., 389 A.2d 1336 (also decided this day). Appellant and Hackney were indicted as codefendants, and both challenged their indictments on jurisdictional and sufficiency grounds.

A.2d 385 (1975); *Heard v. United States, supra; Thompson v. United States,* 88 U.S. App.D.C. 235, 188 F.2d 652 (1951), such evidence can be the basis of a motion for a new trial where the credibility of a witness may be determinative of guilt or innocence. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Furthermore, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. at 1196.

In *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2402 (1976), it was held that when there is only a general request for *Brady* material, such as in the instant case,

> if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. [Footnote omitted.] [3]

Applying this test to the record before us, we conclude that the omitted evidence creates no reasonable doubt as to appellant's guilt.

The statement in question, witness Brenda Green-el's assertion to Police Detective Kilcullen that she did not remember seeing Charles Coleman the night he was killed, contradicted her trial testimony that she was with appellant, Michael White, Coleman, and appellant's girl friend on the night of the killing. Appellant contends that had the jury known of this contradiction, Green-el's trial testimony as to an argument between appellant and Coleman that night over Coleman's alleged robbery of White's narcotics (the proffered motive for Coleman's murder), might very well have been disregarded, and appellant's participation in the killing disbelieved. This contention ignores the overwhelming evidence of appellant's guilt, however, including his admission to Jesse Martin that he shot Coleman to death with a .38 caliber pistol in Rock Creek Park because Coleman had robbed White of some narcotics; the medical examiner's corroboration of Martin's testimony that Coleman was killed by ten shots from two guns; witness Angela Bannister's testimony that during the first week of February 1973, appellant entrusted her with a .38 caliber pistol subsequently determined to be the murder weapon; witness Jean Boyd's and Martin's identification of that .38 caliber gun frequently carried by appellant; appellant's admission on cross-examination that he had used the same gun in a robbery; and Emma Coleman's narrative of appellant's bizarre behavior at her brother's funeral. Given this evidence, we find that consideration of Ms. Green-el's conflicting statements yields something far short of reasonable doubt.

Appellant also argues that the nondisclosure was in violation of the Jencks Act because Detective Kilcullen's notes constituted discoverable statements which were not produced at trial. For the Jencks Act to apply, the records at issue must be "statements" within the meaning of the Act. Here, where the statement of the witness, Brenda Green-el, was oral, a transcription of the statement must be "substantially verbatim" and "recorded contemporaneously." [4] Moreover, mere selective

---

**3.** *See also Garrison v. Maggio,* 540 F.2d 1271 (5th Cir. 1976), which held that where the undisclosed evidence is useful only for impeachment purposes, a stricter standard than that announced in *Agurs v. United States, supra,* applies. In such cases, the appellant must "demonstrate that the new evidence probably would have resulted in an acquittal, . . . before a new trial must be granted . . . ." *Id.* at 1273–74. We have no need to decide which is the proper standard since under either test appellant's claim must fail.

**4.** 18 U.S.C. § 3500(e) (1970), provides:

notations or excerpts from the whole of the oral statement will not satisfy the production requirements of the Act. *Palermo v. United States*, 360 U.S. 343, 352–53, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); *Moore v. United States*, D.C.App., 353 A.2d 16, 18 (1976). The manner in which Detective Kilcullen recorded Ms. Green-el's remark can at best be described as a mere selective notation or excerpt. Kilcullen himself characterized his notes as "miscellaneous" and he unequivocally asserted that they were not verbatim.[5] The remark in question was recorded as a portion of rough notes from three separate interviews with Ms. Green-el over a two-day period. Although police notes have been regarded as potentially Jencks material, *Hardy v. United States*, D.C.App., 316 A.2d 867, 870 n.3 (1974), we have also said that

> these notes have been thought to fall outside the Jencks Act because they are "rough", "general", "sketchy", and/or "hasty", and thus not verbatim statements of the witness. . . . [*Moore v. United States, supra* at 19 (footnotes omitted).]

Accordingly, we are unpersuaded by appellant's first assignment of error.

## II

Appellant next contends that the twenty-month delay between his arrest and trial violated his constitutional right to a speedy trial.

*Barker v. Wingo*, 407 U.S. 514, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which places the ultimate burden of assuring that criminal cases are promptly tried on the courts and on the government, establishes a four-pronged balancing test to determine whether this burden has been met in any given case. The courts are advised to consider the length of the delay, the reasons for the delay, the assertion of the right to a speedy trial by the accused, and the resultant prejudice to the accused in assessing the constitutional claim, *id.* at 530, 92 S.Ct. 2182, and we do so here.

Well-established general guidelines are that delay of a year or more between arrest or indictment and trial gives prima facie merit to an accused's claim that his right to a speedy trial has been denied.[6] The burden then shifts to the government to justify the delay,[7] and the more complex and serious the charge, the easier it will be for the government to meet this burden. *Barker v. Wingo, supra* at 531, 92 S.Ct. 2182; *United States v. Holt*, 145 U.S.App. D.C. 185, 448 F.2d 1108, *cert. denied*, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971). Failure to meet this burden requires dismissal of the indictment. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker v. Wingo, supra*, 407 U.S. at 522, 92 S.Ct. 2182.

The length of the delay in the instant case, twenty months, gives the appellant's claim prima facie merit and places the burden on the government to satisfactorily explain the delay. However, that twenty-month delay can be divided into two distinct periods separated by the mistrial declared on February 15, 1974. The responsibility for the nine-month delay between appellant's arrest and his first trial must be

---

The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

\* \* \* \* \* \*

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; . . .

**5.** Detective Kilcullen so testified at the trial of Hubert Hackney.

**6.** *United States v. Perkins*, D.C.App., 374 A.2d 882 (1977); *Branch v. United States*, D.C.App.,

372 A.2d 998 (1977); *United States v. Mack*, D.C.App., 298 A.2d 509 (1972); *United States v. Holt*, 145 U.S.App.D.C. 185, 448 F.2d 1108, *cert. denied*, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971); *Hedgepeth v. United States*, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966).

**7.** *Branch v. United States, supra* note 6; *United States v. West*, 164 U.S.App.D.C. 184, 504 F.2d 253 (1974); *Smith v. United States*, 135 U.S. App.D.C. 284, 418 F.2d 1120, *cert. denied*, 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969).

shared by the government [8] and the appellant, for a five-month delay was due to court congestion and a three-month delay resulted from appellant's motion for a mental examination to determine his competency to stand trial. Appellant argues that a portion of this latter period is properly chargeable to the government, for just as he has no control over court delays, he has no control over delays inherent in the completion of such examinations.

Addressing the same question in *United States v. Ransom,* 151 U.S.App.D.C. 87, 89, 465 F.2d 672, 674 (1972), the court stated:

> [G]iven the state of existing facilities, a measure of even unwelcome delay must be tolerated if we are to combine the speedy trial guarantee with the other elements of justice, here the competency determination process which the defendant himself initiated . . . . [Citations omitted.]

*See also United States v. Lynch,* 163 U.S. App.D.C. 6, 499 F.2d 1011 (1974). Another month-long delay resulted from appellant's motion for a continuance, which advanced the trial date from January 7, 1974 to February 12, 1974.

None of the original nine-month delay is attributable to arbitrary, purposeful, oppressive or vexatious action by either side, and even appellant concedes that "[h]ad that trial not been aborted, the appellant, if convicted by that first jury, would not here be arguing that his right to a speedy trial was infringed." [9] Rather, appellant charges only that it is the unjustified delay of eleven months between the declaration of a mistrial and his second trial that violated his constitutional right to a speedy trial. An examination of the record, however, discloses that it is the appellant and not the government who must bear the responsibility for the bulk of this second period of delay.

There was a delay of two months following the mistrial resulting from the appointment of new counsel for codefendant Hackney. The Supreme Court has held that criminal proceedings may involve the delay inherent in a deliberate pace appropriate to satisfy other constitutional and procedural safeguards of criminal defendants. *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). *See also Hedgepeth v. United States,* 125 U.S.App.D.C. 19, 365 F.2d 952 (1966). The following two months encompassed hearings and decision of several motions filed by codefendant Hackney's new counsel, but the time consumed in deciding these motions, which was not unreasonable, must be charged to the appellant inasmuch as he joined in several of them. *United States v. Jones,* 173 U.S. App.D.C. 280, 296, 524 F.2d 834, 850 (1975).

The remaining delay from June 3, 1974 to January 7, 1975, when appellant's second trial began, passed with appellant's concurrence. Appellant's counsel initially suggested a trial date in early December because of his participation in another lengthy trial. With the acquiescence of both parties, the trial date was postponed until early January so as to avoid conflict with the Christmas holidays.

In summary, the record discloses no tactical or self-serving delays caused by the government. In fact, almost all of the time chargeable to the government lapsed due to institutional delays and given appellant's responsibility for the acquiescence in much of the pretrial delay, we conclude that the twenty-month delay between his arrest and trial was not so unreasonable, in due absence of a substantial showing of prejudice, as to require that the charges be dismissed.

 The government argues that whatever the merits of appellant's claim, he cannot be heard to complain since he failed

---

8. *Perkins v. United States, supra; United States v. Jones,* 173 U.S.App.D.C. 280, 524 F.2d 834 (1975); *United States v. Cooper,* 164 U.S. App.D.C. 191, 504 F.2d 260 (1974); *United States v. West, supra.*

9. Appellant's brief at 83.

to assert his right to a speedy trial at any time before his second trial. While the Supreme Court has rejected the rule that a defendant who fails to demand a speedy trial forever waives his right, it has added that "[t]his does not mean, however, that the defendant has no responsibility to assert his right," *Barker v. Wingo, supra*, 407 U.S. at 528, 92 S.Ct. at 2191, and the failure to assert the right, of course, makes it difficult for a defendant to prove that he was denied a speedy trial. *Id.* at 532, 92 S.Ct. 2182. Similarly, the United States Court of Appeals for the District of Columbia, when faced with a belated demand for a speedy trial as in the instant case, held:

> Although there can be no doubt that appellant did assert his right, we believe that appellant's assertion, coming as late and as close to the time when the trial actually began as it did, does not weigh heavily in his favor. [*United States v. Jones, supra*, 173 U.S.App.D.C. at 297, 524 F.2d at 851.]

We recognize, however, that when a defendant is incarcerated pending trial, the government must assume that he wants a speedy trial unless he asserts otherwise, *United States v. Calloway*, 164 U.S.App. D.C. 204, 210, 505 F.2d 311, 317 (1974), and conclude that although appellant's actual assertion of his right came too late to weigh heavily in his favor, the constructive demand arising from the fact of his incarceration certainly preserved his right.

■ Prejudice to an accused is to be assessed in light of the interests sought to be protected by the right to a speedy trial. *Barker v. Wingo, supra*, 407 U.S. at 532, 92 S.Ct. at 2193. As indicated by the Court, these interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* Appellant contends that the twenty-month pretrial delay adversely affected each of these interests.

■ Pretrial delay can, of course, prejudice a defendant already incarcerated on another charge,[10] *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.E.2d 607 (1969); *Coleman v. United States*, 142 U.S.App.D.C. 402, 442 F.2d 150 (1971), and all defendants are subject to a certain amount of anxiety pending the outcome of their trials. Moreover, where an alibi defense is presented by the accused, such as in the instant case, a long pretrial delay can potentially impair the recollection and testimony of the accused's alibi witnesses. *United States v. Perkins*, D.C.App., 374 A.2d 882 (1977). We are unpersuaded, however, that appellant suffered any significant prejudice as a result of the delay in his retrial.

■ Central to our conclusion of no substantial prejudice is the appellant's course of conduct during pretrial. Despite the filing of a large number of pretrial motions, none was filed requesting a speedy resolution of the charges. It was not until the first day of his retrial that appellant for the first time asserted his right to a speedy trial. While failure to demand a speedy trial does not constitute a waiver of the right, it must be considered in assessing appellant's claim of prejudice. *United States v. Canty*, 152 U.S.App.D.C. 103, 108, 469 F.2d 114, 119 (1972). *See also Hedgepeth v. United States, supra*, 124 U.S.App. D.C. at 295, 364 F.2d at 688. Combining this silence with the fact that appellant was responsible for much of the delay, it would seem that appellant was satisfied with the pace of litigation and not concerned with possible prejudice to his defense. As the Supreme Court has said:

> [B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial. [*Barker v. Wingo, supra*, 407 U.S. at 536, 92 S.Ct. at 2195.]

*See also United States v. Canty, supra*, 152 U.S.App.D.C. at 107, 469 F.2d at 118.

---

10. Appellant was incarcerated on a charge of robbery during pretrial in the instant case.

Our finding of no substantial prejudice to appellant is further based upon the strength of the case against him. Given the vast amount of evidence presented by the prosecution,

> it seems almost inconceivable that a more expeditious trial would have permitted the defendant to punch any significant holes in the prosecution's case. [*United States v. Canty, supra* at 114, 469 F.2d at 125.]

*See also United States v. Jones, supra.*

Weighing the factors we are admonished to consider, we conclude that the government has clearly rebutted appellant's prima facie claim of denial of a speedy trial.

### III

 Appellant claims that the trial court erred in denying his motion to sever the counts of the indictment involving the Coleman murder, the only homicide about which he wished to testify, from those charging him with the three other murders. Super.Ct.Cr.R. 14 and D.C.Code 1973, § 23–313 provide that if a defendant "is prejudiced by a joinder of offenses . . . in an indictment . . . or by such joinder for trial . . . the court may order an election or separate trials of counts . . .." However, to convince an appellate court that the defendant has been prejudiced by joinder, the appellant must demonstrate that there has been a clear abuse of discretion by the trial court. *See Bridges v. United States,* D.C.App., 381 A.2d 1073 (1977); *Calhoun v. United States,* D.C.App., 369 A.2d 605, 608 (1977); *Coleman v. United States,* D.C.App., 298 A.2d 40, 42 (1972), *cert denied,* 413 U.S. 921, 93 S.Ct. 3070, 37 L.Ed.2d 1043 (1973). No such abuse can be found unless it appears (1) that the jury may cumulate evidence of separate crimes to find guilt, (2) that the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt, or (3) that the defendant may become embarrassed *or* confounded in presenting defenses

to different charges. *Bell v. United States,* D.C.App., 332 A.2d 351, 353 (1975). *See Blunt v. United States,* 131 U.S.App.D.C. 306, 311, 404 F.2d 1283, 1288 (1968), *cert. denied,* 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969). Appellant concedes that the first two types of prejudice were "diminished" in the instant case because evidence of the four homicides would have been mutually admissible in separate trials. *Bell v. United States, supra* at 353; *Coleman v. United States, supra* at 42. With regard to the third type of prejudice, no need for severance exists "until the defendant makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *Baker v. United States,* 131 U.S.App.D.C. 7, 26, 401 F.2d 958, 977 (1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). *See Roldan v. United States,* D.C.App., 353 A.2d 292 (1976); *Coleman v. United States, supra* at 43 n.3. It does not appear that appellant presented sufficient information to the trial court as to the nature of the testimony he wished to give on the Coleman murder count and his reasons for not testifying on the other homicide counts. In his supplemental memorandum of points and authorities in support of his motion for severance before the trial court, appellant simply stated: "[I]t is very possible that the defendant will wish to take the stand with respect to one charge and not the others." As the court stated in *Bradley v. United States,* 140 U.S.App.D.C. 7, 16, 433 F.2d 1113, 1122 (1969):

> [T]he accused's election to testify on some but not all of the charges on trial does not automatically require a severance. [Citations omitted.]

*Accord, United States v. Williamson,* 482 F.2d 508 (5th Cir. 1973). Without further edification regarding the nature of appellant's anticipated testimony and the basis for his silence, the trial court could not satisfy itself that the claim was genuine and balance the considerations of economy and expedition in judicial administration

against appellant's interest in freely deciding to testify. *Baker v. United States, supra*, 131 U.S.App.D.C. at 26, 401 F.2d at 977.

Super.Ct.Cr.R. 8(a) and D.C.Code 1973, § 23–311(a) provide for permissible joinder of offenses in certain cases:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The facts of the instant case seem to fit neatly within this rule. The theory of the prosecution, which was evident throughout the trial, was that the four murders were precipitated by Coleman's allegedly robbing White of some narcotics. White enlisted appellant's assistance in the killing of Coleman. However, White's girl friend, Brenda Green-el, was regarded by appellant as a threat because she might expose his complicity in the Coleman murder. When White refused to execute Green-el on appellant's order, appellant, allegedly aided by Hackney, killed White. Theodore Moore and Yale Harris were murdered by appellant, Hackney, and Martin because they inquired about White. For these reasons we find that the trial court acted properly in denying appellant's motion for severance.

Accordingly, the judgments of conviction on appeal are

*Affirmed.*

HARRIS, Associate Judge:

I concur fully in the result, and in Parts I and III of my colleague's opinion. I also concur in Part II of the opinion, with the exception of the following paragraph thereof:

> Well-established general guidelines are that delay of a year or more between arrest or indictment and trial gives prima facie merit to an accused's claim that his right to a speedy trial has been denied. The burden then shifts to the government to justify the delay, and the more complex and serious the charge, the easier it will be for the government to meet this burden. *Barker v. Wingo, supra* at 531, 92 S.Ct. 2182; *United States v. Holt*, 145 U.S.App.D.C. 185, 448 F.2d 1108, *cert. denied*, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971). Failure to meet this burden requires dismissal of the indictment. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker v. Wingo, supra*, 407 U.S. at 522, 92 S.Ct. 2182. [*Ante*, at 1329 (footnotes omitted).]

My inability to agree with that paragraph does not, however, make the views I now express a dissent. Rather, as we are but a two-judge division due to the unfortunate death of Judge Fickling, my disagreement precludes the above-quoted paragraph from having precedential significance. Thus, that paragraph constitutes but an expression of opinion by my Sister KELLY with respect to which I not only disagree but feel obliged to comment.

In footnote 7 to the subject paragraph, Judge KELLY cites her decision for the court in *Branch v. United States*, D.C.App., 372 A.2d 998 (1977). I recognize that in *Branch*, this court stated: "A delay of a year or more between arrest and trial gives prima facie merit to a claim that an accused has been denied the right to a speedy trial." *Id.*, at 1000. The court in *Branch* went on to state that: "A heavy burden then shifts to the government to justify the delay." *Ibid.* I also recognize that *Branch* is existing precedent, notwithstanding what I respectfully consider to be its shortcomings.[1] I express these views because of my concern that bar and bench may permit *Branch* to obscure the relevant Supreme Court precedents which must control the resolution by both the trial court and this court of

---

1. I do not disagree with *Branch's* holding, but rather with its dictum as to the automatic effect of the passage of more than one year between arrest and trial.

a claim of a denial of the right to a speedy trial.

A brief recitation will place the problem in context. In 1966, the United States Court of Appeals resolved a speedy trial issue in *Hedgepeth v. United States*, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966). In that case, the court made a relatively innocuous comment as it set forth the facts. It stated:

Since the claim has prima facie merit, in view of the lapse of more than a year between appellant's arrest and his trial . . . we undertake a review of the intervening events. [*Id.*, at 293, 364 F.2d at 686.]

The *Hedgepeth* court went on, however, to recognize:

Whether a delay in bringing a defendant to trial results in a denial of his right to a speedy trial requires an analysis of the particular circumstances of each case. There is no touchstone of time which sets a fixed maximum period that automatically requires application of the Sixth Amendment and dismissal of the indictment. [*Id.*, at 294, 364 F.2d at 687 (footnote omitted).]

Nearly six years later, the circuit court decided *United States v. Bishton*, 150 U.S. App.D.C. 51, 463 F.2d 887 (1972). Without citing the *Hedgepeth* decision to which I have referred, the *Bishton* court stated:

We have intimated that when the delay in prosecution exceeds twelve months, prejudice to the defendant is presumed and need not be affirmatively shown. But even the prejudice which is presumed to inhere in all cases where the delay is particularly long must be weighed against the other considerations we have mentioned. [*Id.*, at 55, 463 F.2d at 891 (citations omitted).]

The Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33

L.Ed.2d 101 (1972), was issued two months after the circuit court's opinion in *Bishton*. In *Barker*, the Court specifically rejected a fixed-time approach to the resolution of speedy-trial claims. It stated:

We, therefore, reject both of the inflexible approaches—the fixed-time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which we have deemed fundamental. The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.[2] [*Id.*, at 529–30, 92 S.Ct. at 2191–92.]

One may search through *Barker v. Wingo* in vain for any concept of a presumption of prejudice arising from the passage of a particular time period prior to trial, or for the placing of any specific burden (much less a heavy one) upon the government to justify a particular period of delay. The Supreme Court did not even intimate the existence of such factors, and affirmatively stated: "We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Id.*, at 523, 92 S.Ct. at 2188.

Sight must not be lost of the basic holding of *Barker v. Wingo*. There the Court considered a delay of more than five years between arrest and trial. While the Court labelled such a delay as "extraordinary"

---

**2.** Typically, other courts (including ours) have referred to *Barker v. Wingo* as having established a four-pronged test for weighing speedy trial issues. As the above-quoted portion of

the Court's opinion makes clear, however, the four enumerated "prongs" were stated to be "some of the factors which courts should assess."

(*id.*, at 534, 92 S.Ct. 2182), no constitutional deprivation of the defendant's right to a speedy trial was found to have existed—in part because the Court concluded that the "record . . . strongly indicates . . that the defendant did not want a speedy trial." [3] *Id.*, at 536, 92 S.Ct. at 2195.

Why, then, did the division of this court which decided *Branch v. United States* utilize dictum which both presumed prejudice after 12 months and placed a "heavy burden" on the government to counteract that presumption? I do not know, for such comments are alien to the balancing test prescribed in *Barker v. Wingo.*[4]

In the final sentence of the paragraph of Judge KELLY's opinion with which I cannot agree, she states (and I quote again):

Failure to meet this burden [of justifying the delay] requires dismissal of the indictment. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker v. Wingo, supra*, 407 U.S. at 522, 92 S.Ct. 2182.

In fact, neither *Strunk* nor *Barker* suggests that the government even has such a burden, much less that a failure to meet it— under what could only be characterized as a single-pronged analysis—calls for a dismissal of the indictment.

*Strunk* presented a novel issue. The Seventh Circuit had concluded that the defendant in that case had been denied his right to a speedy trial, but it also had held anomalously that "the 'extreme' remedy of dismissal of the charges was not warranted." *Id.*, 412 U.S. at 435, 93 S.Ct. at 2261. The delay in *Strunk* was only ten months, and the Supreme Court reflected its implicit disagreement with the conclusion that there had been a speedy trial deprivation as follows:

However, in the absence of a cross-petition for certiorari, questioning the holding that petitioner was denied a speedy trial, the only question properly before us for review is the propriety of the remedy fashioned by the Court of Appeals. [*Id.*, at 437, 93 S.Ct. at 2262.]

The Supreme Court concluded in *Strunk* that when it has been determined that there has been a denial of the right to a speedy trial, the only appropriate remedy is a dismissal of the charges.[5] In reaching that result, the Court reaffirmed "that *Barker* prescribes 'flexible' standards based on practical considerations." *Strunk v. United States, supra*, at 438, 93 S.Ct. at 2263.

Thus, notwithstanding the *Branch* dictum which is the subject of these comments, I

---

**3.** Few people are so naive as to believe that a large percentage of defendants do not consider delay to be an ally, rather than an enemy. In *Hedgepeth v. United States, supra*, the circuit court referred to "a defendant who has reason to believe that prompt trial will result in conviction, and that defense chances may be improved by delay and later unavailability of witnesses against him." 124 U.S.App.D.C. at 295 n.5, 364 F.2d at 688 n.5.

**4.** In *Branch*, the division did not seek to exercise supervisory power to establish "a fixed time period within which cases normally must be brought." *Cf. Barker v. Wingo, supra*, 407 U.S. at 531 n.29, 92 S.Ct. at 2192 n.29.

It should be noted that when Congress was considering the Speedy Trial Act of 1974, thought was given to including the Superior Court of the District of Columbia within its purview. As those controversial provisions were enacted, however, the Superior Court was excluded. *See* 18 U.S.C.A. § 3161 (1978

Supp.). Such a legislative decision was eminently sound. In *Bowman v. United States*, D.C.App., 385 A.2d 28 (1978), we made reference to the Superior Court's overwhelming criminal (and juvenile delinquency) caseload, and noted that "the passage of more than 365 days from arrest to trial (a period which certainly has no talismanic constitutional significance) may become the rule rather than the exception." *Id.*, at 30 n.3. As did the circuit court in *United States v. Ransom*, 151 U.S.App. D.C. 87, 465 F.2d 672 (1972), we must recognize that:

[G]iven the state of existing facilities, a measure of even unwelcome delay must be tolerated to combine the speedy trial guarantee with the other elements of justice . . . [*Id.*, at 89, 465 F.2d at 674.]

**5.** The division's opinion in *Branch* correctly stated: "The remedy for the denial of the right to a speedy trial is dismissal of the indictment." 372 A.2d at 1000.

remain convinced that the ultimate disposition of any speedy trial contention properly must begin and end with an application of the principles set forth in *Barker v. Wingo. See also United States v. McDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (absent unusual circumstances, trial court should resolve speedy trial contentions after trial has been conducted). As I respectfully consider the position expressed by Judge KELLY in the subject paragraph of her otherwise excellent opinion to be inconsistent with the *Barker* guidelines, I am unable to agree therewith.